John Henry PAYNE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14193.

Court of Criminal Appeals of Oklahoma.

Nov. 8, 1967.

Rehearing Denied Jan. 16, 1968.

Tom A. Lucas, Norman, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

Ed Parks, Tucker, Boyd & Parks, Tulsa, amici curiæ.

BRETT, Judge.

This is an appeal from the district court of Cleveland County, where the plaintiff in error, hereinafter referred to as "defend-

ant", was tried and convicted of the crime of receiving stolen property. Judgment and sentence was entered November 6, 1966, and defendant was sentenced to serve one year and one day in the state penitentiary. Thereafter he perfected his appeal to this Court.

Defendant was prosecuted under the provisions of Title 21, O.S.Supp.1961, § 1713, which defines the crime of "receiving stolen property", and also provides a "presumption", as follows:

"(1) Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever that has been stolen, embezzled, obtained by false pretense or robbery, knowing or having reasonable cause to believe the same to have been stolen, embezzled, obtained by false pretense, or robbery, or who conceals, withholds, or aids in concealing or withholding such property from the owner, is punishable by imprisonment in the penitentiary not to exceed five (5) years, or in the county jail not to exceed one (1) year, or by a fine not to exceed Five Hundred Dollars ($500.00) or by both such fine and imprisonment.

"(2) Every person who, without making reasonable inquiry, buys, receives, conceals, withholds, or aids in concealing or withholding any property which has been stolen, embezzled, obtained by false pretense or robbery, or otherwise feloniously obtained, under such circumstances as should cause such person to make reasonable inquiry to ascertain that the person from whom such property was bought or received had the legal right to sell or deliver it *shall be presumed* to have bought or received such property knowing it to have been so stolen or wrongfully obtained. *This presumption may, however, be rebutted by proof.*" (Emphasis added.)

Defendant argues his appeal under five propositions in his brief. It will not be necessary to discuss the first four of those propositions in order to resolve this matter, except as they might relate to his fifth one.

The fifth proposition is stated as follows:

"The presumption of defendant's innocence was effectively ignored thereby depriving him of due process of law."

However, before entering into a discussion of his proposition, a brief résumé of the facts should be provided.

In effecting this conviction, the State offered the testimony of only two witnesses. The first witness was Mr. Alfred B. Weirich, who testified in substance: that at the conclusion of a rather large party had in his apartment—at which approximately one hundred people attended and which lasted over a period of about forty-eight hours—he discovered, on May 1st, that his "Dorsett stereo, with a Gerard changer", several record albums and other items, were missing. He valued the stereo at $300, so he immediately reported the alleged theft to the Norman City police. He testified that he did not give or sell the instrument to anyone. He also stated that the defendant attended the party, as an uninvited guest, and was among the last to leave early Sunday morning, May 1st.

The second witness, offered by the State, was Norman City detective James L. McBride. Detective McBride testified, in substance, that at approximately 9:30 on May 20, 1966, he and Sergeant Argo, of the Norman Police Department, went to the defendant's home to search for the property alleged to have been stolen, and that the stereo and records were found there. In response to the question asked on direct examination by the prosecutor, "By what authority did you go to Mr. Payne's residence?", the witness answered, "We had a search warrant issued by the County Attorney's Office of Cleveland County."

Detective McBride identified the instrument and records which he and Sergeant Argo obtained at the defendant's home. However, Mr. Weirich's identification of the instrument, as being the one he had in his apartment, was not satisfactory. Of course, if that stereo is the only instrument of that type manufactured by Dorsett, a point on which the record is not entirely

·clear, then his identification might be acceptable. His identification was as follows: "I know the machine and I remember the part of the reject arm being a little loose, and it had a tendency to mal-function, sometimes it would play all right and feed records in properly, and sometimes it would not. And also, it had a tendency to blank out on one channel and play intermittently on one side or the other, it didn't play very well."

However, the identification is not necessarily pertinent to the determination of this matter.

We would observe also, and we presume the search warrant referred to by Detective McBride was one issued by a proper magistrate, and that the witness was in error when he stated it had been issued by the County Attorney's office.

The defendant testified in his own behalf and admitted that he attended the Weirich party, but stated that he had earlier met Dwight Greenwood, and David and Jerry Owens at Jack's Bar in Norman. When the four left Jack's Bar, he and David Owens went in the same car, and David suggested that since he had been invited to the Weirich party they stop there, which they did. He denied any knowledge of the Weirich stereo, or that he had even seen it in the apartment. He stated that he and David Owens left the party about 3 a. m. and went to the Soonerland Grill in Norman, where they rejoined the other two men. About 4 a. m. he and Dwight Greenwood departed the Soonerland Grill and went to the "Copper Top" in Oklahoma City. Since it was then Sunday morning, they couldn't buy beer, so they drank coffee and played pool. He stated that he and Greenwood were playing pool, when a man known only as "Frank" challenged the winner at the game.

The defendant continued that since he was the winner, he accepted "Frank's" challenge, and they commenced to play and included the element of betting. After some time, the defendant had won the total sum of about $120. When "Frank" was called

on to "pay-off", he admitted that the defendant had already won all the cash he had, and offered to trade the stereo and some records, to cover his loss to defendant. The defendant agreed, and in addition he gave "Frank" $30 cash, so "Frank" wouldn't be broke. He said the three of them loaded the stereo and records into Greenwood's car. Greenwood drove the defendant home. Defendant said the stereo was placed in his living room where it remained until taken by the police.

Dwight Greenwood testified as a defense witness and substantially corroborated the defendant's story, especially as to the place and the manner in which the defendant came into possession of the stereo and records, at the "Copper Top" in Oklahoma City. He stated further, that the three of them loaded the stereo and records into his car, and he drove defendant to his home in Norman.

Defendant's former wife also testified in defendant's behalf. At the time of the trial, defendant and his wife had been divorced. In her testimony she corroborated defendant's story as to the time he returned home, that he gave her the stereo and records, and that they were placed in the living room of their home.

The State offered no rebuttal testimony whatsoever. This conviction was accomplished on the facts: (1) That a stereo and some record albums were allegedly stolen; and, (2) That the stereo and some record albums were recovered at defendant's home.

We observe also that the trial court's instruction number four recited the pertinent statute verbatim, wherein the presumption is stated: "* * * *it shall be presumed* to have bought or received such property knowing it to have been so stolen or wrongfully obtained. *This assumption may however, be rebutted by proof*."

We abide by the case settled by the United States Supreme Court, United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210, which was a case in which the defendant was convicted of possession, cus-

tody and control of an unregistered still. The Court of Appeals for the Second Circuit reversed the conviction on the grounds that the trial court, in instructing the jury, read the provisions of the federal statutes authorizing an inference of guilt from defendant's· unexplained presence at the site of the still, and that the instruction, and the statutory inference embodied therein, violated the due process clause of the Fifth Amendment. The United States Supreme Court affirmed the Court of Appeals, and in its opinion stated:

"But here, in addition to a standard instruction on reasonable doubt, the jury was told that the defendants' presence at the still 'shall be deemed sufficient evidence to authorize conviction.' *This latter instruction may have been given considerable weight by the jury*; the jury may have disbelieved or disregarded the other evidence of possession and convicted these defendants on the evidence of presence alone." (Emphasis added.)

In the instant case, we have little doubt that the jury may have given considerable weight to the court's instruction number 4, and completely disregarded the testimony offered by the defendant:

▇▇▇ Defendant's fifth proposition, "that he was denied due process of law by virtue of the statutory presumption" has merit. The same type situation arose in United States v. Romano, supra, to which the Supreme Court stated:

"The test to be applied to the kind of statutory inference involved in this criminal case is not in dispute. In Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241,

87 L.Ed. 1519, *the Court, relying on a line of cases dating from 1910, reaffirmed the limits which the Fifth and Fourteenth Amendments place 'upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated.'* Id., at 467, 63 S.Ct. at 1245 [87 L.Ed. at 1524]. Such a legislative determination would not be sustained if there was 'no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. * * * [W]here the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts.' Id., at 467–468, 87 L.Ed. at 1524. Judged by this standard, the statutory presumption in issue there was found constitutionally infirm."

The Nevada Supreme Court, relying on United States v. Romano, supra, and United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed. 658, recently passed on the same question with regard to the Nevada statute, which provided that defendant's mere possession of stolen goods within six months of the wrongful taking is evidence sufficient to authorize a conviction of the crime of receiving stolen goods with the knowledge that they are stolen. The Nevada statute is very similar to the statute under consideration in this case.[1]

---

1. "NRS 205.280 reads: Receiving stolen goods: When a gross misdemeanor. .
"1. Every person who receives or buys property that has been wrongfully taken from any other person in any manner, whether or not the act of wrongful taking occurred outside the State of Nevada, and whether or not the property was bought or received from a person other than the person wrongfully taking such property, shall be guilty of a. gross mis- . demeanor.

"2. If such person is shown to have had possession of such property within 6 months from the date of the wrongful taking, such possession shall constitute sufficient evidence to authorize conviction, unless: (a) The property was a gift; (b) The amount paid for the property represented its fair and reasonable value; (c) The person buying such property knew or made inquiries sufficient to satisfy a reasonable man that the seller was in a regular and estab-

The Supreme Court of Nevada in Carter v. State (Nev.) (1966) 415 P.2d 325, 327, recited:

"Though possession is relevant and admissible evidence, it does not necessarily point to guilt. * * * Clearly, the statutory presumption of guilt from possession is arbitrary and cannot satisfy due process requirements, nor may it be said in these circumstances, that the presumption meets the burden cast upon the state to prove the defendant's guilt beyond a reasonable doubt."

The Nevada Court thereafter held that the Nevada statute violates the due process clause of the Fourteenth Amendment to the United States Constitution, as well as that of the Nevada Constitution.

Notwithstanding the fact that this Court in Davie v. State, Okl.Cr. (1966), 414 P.2d 1000, upheld the provisions of Title 21, O.S.A. § 1713, we now hold that paragraph (2) of that section violates the due process clause of the Fourteenth Amendment to the United States Constitution, and the due process clause of Article 2, Section 7 of the Oklahoma Constitution.

We find that there is no reasonable connection between possession (the fact proved) and knowledge that the goods were stolen (the fact presumed), in the absence of some evidence to the contrary, and therefore such presumption is arbitrary. In the instant case, the defendant gave an explanation of his possession, which was corroborated. Whether or not the jury believed defendant's explanation is clearly a question for the jury to decide, but to burden that explanation with the arbitrary presumption of guilt—"which may be rebutted by proof"—destroys the constitutional presumption of innocence until proved guilty.

We are therefore of the opinion that paragraph (2) of Title 21 O.S.A. § 1713, is unconstitutional in that it violates the requirements of due process clause of the

lished business dealing in property of the description of the property purchased; or (d) The person receiving or buying such property has simultaneously

Fourteenth Amendment to the United States Constitution, and the due process clause of Article 2, Section 7, of the Oklahoma State Constitution.

In addition to the fact that this conviction violates the requirements of due process, as the record was presented to this Court, defendant's contention that the State failed to prove venue has considerable merit.

Therefore, for the reasons stated herein, this case is reversed and remanded to the district court of Cleveland County, with instructions to dismiss the charge filed against John Henry Payne, from which this appeal arose.

NIX, P. J., concurs.

BUSSEY, J., concurs in results.

with the receipt or sale reported the transaction to the appropriate local police authorities."