540 P.2d 278

**STATE of Idaho, Plaintiff-Respondent,**

v.

**William TROWBRIDGE, Defendant-Appellant.**

No. 11514.

Supreme Court of Idaho.

July 31, 1975.

---

94

Severt Swenson, Jr., of Becker, Swenson & Shaw, Gooding, for defendant-appellant.

W. Anthony Park, Atty. Gen., Jake Peterson, Asst. Atty. Gen., Boise, for plaintiff-respondent.

McQUADE, Chief Justice.

This is an appeal from a judgment of conviction entered following a jury determination of guilt. We reverse and remand for a new trial.

Appellant, William Trowbridge, was convicted of receiving stolen property in violation of I.C. § 18–4612.[1] Four unbranded range calves were brought to appellant's farm by his brother, James Trowbridge.[2]

---

1. "§ 18–4612. RECEIVING STOLEN PROPERTY.—Every person who, for his own gain, or to prevent the owner from again possessing his property, buys or receives any personal property, knowing the same to have been stolen, is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding six months, or by fine not exceeding $1,000, or by both such fine and imprisonment."

2. James Trowbridge pleaded guilty to grand larceny of the four calves. See *State v.*

James Trowbridge was then employed as a range rider, having started work some two to three weeks prior to the commission of this alleged offense. James Trowbridge was to tend the 2400 to 2600 head of cattle which were ranged in common by the Star Lake Cattlemen's Association.

At trial James Trowbridge testified that when he started to work for the association, the cattle had been left unattended for several weeks and were scattered. Some calves were not "mothered-up." He told several of the ranchers about this confused situation, but nothing resulted. Finally, he took four calves to appellant's farm where they were fed, doctored and pastured. Appellant testified that he did not hide the calves, brand them, or hold them for sale. Appellant was found guilty, a judgment of conviction was entered, and he was sentenced to three years' maximum imprisonment with the trial court retaining 120 days' withheld jurisdiction.

On appeal, appellant urges three assignments of error: (1) The trial court erred in instructing the jury that a presumption of guilt arises from the possession of recently stolen property; (2) the evidence was insufficient to sustain the verdict; and (3) alleged non-responsive answers by a State's witness tending to impune appellant's character and reputation and infer participation in other acts of misconduct were improperly admitted into evidence.

■ We hold the trial court erred in instructing the jury that a *presumption* of guilt arises when the defendant is found in possession of recently stolen property and reverse the judgment of conviction for that reason. Because of our disposition of this case, we find it necessary to discuss only appellant's first and third assignments of error.

The trial court charged the jury with seventeen instructions, including the contested instruction:

"Instruction No. 9

You are instructed that unless possession of recently stolen property is satisfactorily explained there arises a presumption of guilt."

Appellant maintains that the instant instruction erroneously shifts the burden of proof from the State to the defendant, as to guilty knowledge or belief and felonious intent to exercise ownership over the property, once the State proves possession. This, he maintains, unconstitutionally infringes upon the presumption of innocence accorded under the due process clause of the Fourteenth Amendment of the United States Constitution. If, as may have happened in the instant case, a jury instruction lessens the State's burden of proof so that an accused can be convicted without proof beyond a reasonable doubt of all elements of the offense, then the conviction must be reversed as inconsistent with that constitutionally protected presumption of innocence.[3]

Jury instructions denominating the principle that a presumption of guilt arises from the possession of recently stolen property have been sanctioned by this Court. Originally, the Court phrased this principle in terms of a "permissive inference" whereby the possession of recently stolen property was a *circumstance* from which, when unexplained, the guilt of the accused *may be inferred*.[4] Later decisions of this Court for the most part abandoned this permissive inference theory and have, instead, held that a *presumption* of guilt arises from the unexplained possession of

*Trowbridge*, 95 Idaho 640, 516 P.2d 362 (1973).

3. See *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Cool v. United States*, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972); *In re Winship*, 397

U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

4. See, e. g., *State v. Sanford*, 8 Idaho 187, 67 P. 492 (1902); *State v. Smith*, 30 Idaho 337, 164 P. 519 (1917); *State v. Davis*, 57 Idaho 413, 65 P.2d 1385 (1937).

recently stolen property.[5] This presumption has been applied in prosecutions for larceny and burglary. We are now asked to extend the use of this presumption and accompanying instruction to prosecutions for another crime of a larcenous nature, that of receiving stolen property. We decline to sanction the use of this conclusion in the form of a presumption, as set out by the trial court, in cases dealing with the receipt of stolen property.

■ Scienter is necessary for conviction of receiving stolen property. The mere possession of recently stolen property cannot give rise to a legal presumption of "guilty" knowledge or belief, and the accompanying felonious intent, needed for conviction for the receipt of stolen property.[6] Our position is supported by decisions from Nevada[7] and Oklahoma[8] which have held as unconstitutional, statutory *presumptions* of guilt arising from the unsatisfactorily explained possession of recently stolen property. Those decisions analyzed the tested presumption under the "rational connection" test announced by the United States Supreme Court in *Tot v. United States*,[9] and subscribed to by that Court in more recent cases dealing with violations of federal liquor[10] and narcotics[11] laws. *Tot* held that if a statutory presumption is to be sustained, a rational connection must exist between the proven fact and the presumed fact:

> "[T]he due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated. . . .

Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. . . . [W]here the inference is so strained as not to have a reasonable relationship to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts."[12]

In a recent case addressing the validity of a jury instruction somewhat akin to the instant instruction, the United States Supreme Court summarized the holdings of *Tot* and its progeny, which had dealt with statutory presumptions and/or inferences:

> "To the extent that the 'rational connection,' 'more likely than not,' and 'reason-

---

5. *See, e. g., State v. Gilbert*, 65 Idaho 210, 142 P.2d 584 (1943); *State v. Hewitt*, 73 Idaho 452, 254 P.2d 677 (1953); *State v. Kombol*, 81 Idaho 530, 347 P.2d 117 (1959); *State v. Ponthier*, 92 Idaho 704, 449 P.2d 364 (1969). *See generally* Bell, Handbook of Evidence for the Idaho Lawyer, 2nd ed. (1972), 237–39.

6. *See State v. Redeman*, 9 Or.App. 329, 496 P.2d 230 (1972); *State v. Shipman*, 2 Or. App. 359, 468 P.2d 921 (1970); *State v. Morris*, 2 Or.App. 149, 465 P.2d 892 (1970), *cert. denied*, 406 U.S. 972, 92 S.Ct. 2418, 32 L.Ed.2d 673 (1972).

7. *Carter v. State*, 82 Nev. 246, 415 P.2d 325 (1966) ("Though possession is relevant and admissible evidence, it does not necessarily point to guilt." 82 Nev. at 249, 415 P.2d at 327.).

8. *Payne v. State*, 435 P.2d 424 (Okla.Ct. Crim.App.1967) (". . . there is no rea-

sonable connection between possession (the fact proved) and knowledge that the goods were stolen (the fact presumed), in the absence of some evidence to the contrary, and therefore such presumption is arbitrary." 435 P.2d at 428).

9. 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

10. *United States v. Romano*, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *United States v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

11. *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

12. 319 U.S. at 467–68; 63 S.Ct. at 1245, 87 L.Ed. at 1524.

able doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance. What has been established by the cases, however, is at least this: *that if a statutory inference submitted to the jury as sufficient to support conviction satisfied the reasonable-doubt standard* (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, *then it clearly accords with due process." Barnes v. United States.*[13]

We must also agree with *Barnes,* that the courts, too, are bound by due process in establishing rules of evidence: "Common-law inferences, like their statutory counterparts, must satisfy due process in light of present-day experience." *Id.*[14] Our task is to determine if the instant *presumption,* allowing the jury to legally *presume* an ultimate fact, which is one of the elements of the crime to be proved by the State beyond a reasonable doubt (knowledge or belief), from the proof of another fact (possession), affords due process, be that analysis labeled the "rational connection" test or "reasonable doubt" standard.

■ There is insufficient connection between the proved fact of possession of recently stolen property and the ultimate fact of guilty knowledge or belief—or of felonious intent to deprive of ownership—to justify a jury instruction in prosecutions for receiving stolen property that a presumption of guilt arises from the unsatisfactorily explained possession of recently stolen property. However, we do believe that in prosecutions for receipt of stolen property, the trial court may instruct a jury that the unsatisfactorily explained possession of recently stolen property is a circumstance tending to *infer* knowledge of the unlawful character of the property, and that circumstance taken together with a necessary quantum of other incriminating evidence, *may* be used by the jury to reach a verdict, in light of their collective common experience, and the circumstances surrounding the case.[15]

■ Appellant argues that the trial court erred in refusing to strike a portion of the following testimony offered by State's witness Sheriff Brown on cross-examination:

"Q. If they (the calves) were in the barn, is there any way you could observe them through an open door or anything of this nature?

A. No, not without going on his property.

Q. Did you go on his property and make a search after this arrest?

A. Yes.

Q. Did you find other calves or anything of this nature?

A. Yes. We found other calves. *Yes, we found some and some disap-*

---

13. 412 U.S. 837, 843, 93 S.Ct. 2357, 2361–62, 37 L.Ed.2d 380, 386 (1973). [Emphasis added.]

14. 412 U.S. at 844–45, 93 S.Ct. at 2362, 37 L.Ed.2d at 387.

15. *See Buckles v. State,* 291 Ala. 359, 280 So.2d 823 (1973); *Barnes v. United States, supra* n. 13, where the United States Supreme Court held that in a prosecution for the knowing possession of stolen mail, the trial court correctly set forth this common law principle in the form of the following *inference:*

"Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

However, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from the possession of recently stolen property. . . ." 412 U.S. at 840, 93 S.Ct. at 2360, 37 L.Ed.2d at 384, n. 3.

*Cf. Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

*peared down the road about seven miles or so.*

Q. I ask that be stricken. I don't think it is responsive to the question."

Appellant maintains Brown deliberately interjected a response beyond the scope of defense counsel's cross-examination in an attempt to accuse appellant of similar acts of misconduct. While we cannot attempt to divine Sheriff Brown's motives, we cannot agree with the State that Brown's answer was merely responsive to defense counsel's questioning. Counsel's question pertained to Brown's search of appellant's property, and in particular, to the pen and barn area where the calves were kept. We believe Brown's statement prejudically inferred that appellant was involved in similar larcenous acts. The trial court should have sustained counsel's motion to strike.

■ Appellant further maintains that the trial court erred in overruling his objection to the State's interrogation of Sheriff Brown on re-direct examination concerning these other calves that were later found near appellant's farm:

"Q. You indicated there were other calves which were observed on Mr. Trowbridge's place in Wendell, other livestock?

A. Yes.

Q. You also indicated some of these other calves that were observed on this place were later observed elsewhere than his place?

A. Yes.

·Q. Where were they?

MR. SWENSON: I object. I can't see the relevancy in regard to the specific charge at issue today . . . .

MR. VARIN: *We feel Mr. Swenson raised this on cross and we should have the right to pursue it, and perhaps an obligation.*

THE COURT: *Yes, it was brought up on cross examination, and he may answer as to the other livestock there.*

. . . . . .

Q. Did you observe other livestock on defendant's place is that not correct?

. . . . .

A. There is one little black, white faced bull . . . And a little roam heifer . . . that was there all the time we observed this up until the day that they brought these calves in. The next morning they were reported on the highway —the next morning early they were reported on the highway seven miles from his place. We were called down there. We went down there. The brand inspector and I both identified these as the same cattle we seen on Bill Trowbridge's place the day before.

. . . . . .

Q. Did Bill Trowbridge ever report to you they were stolen?

A. No.

Q. Did he make any claim of ownership at all to them?

A. No.

Q. Were they brought to his attention?

A. Yes; not by me, but they were supposedly brought to his attention by my deputy Jim Burke."

We agree with appellant that this further testimony may also have created an inference in the minds of the jury that appellant was in the business of receiving stolen property. From the record, it appears the trial court allowed the State to continue the above line of questioning over defense counsel's objection because the court felt it was first raised on appellant's cross-examination. Since defense counsel did not initially raise the subject, and since Brown's answer on cross-examination was not responsive, defense counsel's objection to the above re-direct interrogation by the State should have been sustained. In light of the evolution of the examination of this witness, and the trial court's actions concerning the defense motion to strike and objection to questioning on re-direct, we do not feel

that counsel was obliged to make continual objections to the State's line of questioning.

The judgment of conviction is *reversed* and the case is *remanded* for a new trial.

McFADDEN, DONALDSON and BAKES, JJ., concur.

SHEPARD, Justice (concurring in part and dissenting in part).

I concur in the majority opinion except that portion relating to the answers of a witness elicited by defense counsel upon cross-examination. In my judgment, the inference to be drawn as argued by appellant is at best remote. Defense counsel asked the witness whether other calves had been found on defendant's property. He answered that he had so found other calves. He also indicated in subsequent questioning that he found two particular calves on defendant-appellant's property and that later those two same calves were found wandering the road. I fail to see how such testimony was other than solicited by the defense, or how such testimony inferred that appellant was involved in other larcenous acts.