651 P.2d 569

STATE of Idaho, Plaintiff-Respondent-Cross Appellant,

v.

Eldon Orin WILLIAMS, Defendant-Appellant-Cross Respondent.

No. 13946.

Court of Appeals of Idaho.

Sept. 21, 1982.

Fred M. Gibler, Brown, Peacock, Keane & Boyd, P. A., Kellogg, for defendant-appellant-cross-respondent.

David H. Leroy, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Timothy M. Walton and Myrna A. I. Stahman, Deputy Attys. Gen., Boise, for plaintiff-respondent-cross-appellant.

**638**

BURNETT, Judge.

Eldon Williams stands convicted on two counts of second degree burglary, arising from separate incidents that occurred on the same day. The evidence at trial tended to connect Williams with a forced entry of a drug store in one instance, and with possession of recently stolen property from another drug store in the second instance. Upon this evidence the trial judge charged the jury to make certain presumptions concerning Williams' intent and participation in the alleged burglaries. For reasons stated in the first part of our opinion, we hold that the jury was improperly instructed on presumptions, and that the judgment of conviction should be reversed.

In the next section of our opinion we examine, for the purpose of remand, Williams' challenge to (a) the trial court's refusal to give requested instructions on circumstantial evidence and proof of a defendant's identity; (b) the admission of lay opinion testimony and of a particular exhibit; and (c) the sufficiency of evidence to justify a trial on one of the burglary charges. We do not reach another issue raised by Williams, regarding late disclosure of evidence by the prosecution, because it is mooted by our reversal and remand. In the final part of the opinion, we address the state's cross-appeal from dismissal of a "persistent violator" charge.

I

■ In the public mind, the term "burglary" often is equated with "stealing" or with "breaking and entering." But they are not the same. Burglary is a crime of specific intent. Under the law in effect at times pertinent to this case, burglary was defined as the entry into a building or other structure "with intent to commit grand or petit larceny or any felony." I.C. § 18-1401. The entry need not be forcible, and a larceny (or any felony) need not actually result. *State v. McCormick,* 100 Idaho 111, 594 P.2d 149 (1979); *State v. Sullivan,* 34 Idaho 68, 199 P. 647 (1921). Conversely, the mere fact that something has been stolen does not necessarily mean that a burglary has occurred. The evidence must show an entry with contemporaneous intent to commit the larceny or a felony. *State v. Bigley,* 53 Idaho 636, 26 P.2d 375 (1933); *State v. Sullivan, supra.*

■ The question of intent is for a jury to decide. *State v. Dwyer,* 33 Idaho 224, 191 P. 203 (1920). An inference of intent may be drawn from circumstantial evidence. *E.g., State v. Oldham,* 92 Idaho 124, 438 P.2d 275 (1968). Actual commission of a larceny is evidence from which a jury is entitled, but not required, to infer the requisite intent. *State v. Bigley, supra; State v. Bull,* 47 Idaho 336, 276 P. 528 (1929). A similar inference may be drawn from evidence of forced entry. *State v. Liston,* 95 Idaho 849, 521 P.2d 1028 (1974).[1]

In this case the jury instructions went beyond explaining these permissive inferences. The instructions ventured into the realm of presumptions. Instruction No. 10 stated that unexplained breaking and entering raises a "presumption . . . that the breaking and entering were accomplished with the intent to commit larceny." The jury was further informed that "[t]he presumption is effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption. . . ."[2]

---

1. In *Ex parte Seyfried,* 74 Idaho 467, 264 P.2d 685 (1953), our Supreme Court mentioned both an inference and a presumption of burglary, arising from evidence of forced entry. Although jury instructions were not at issue in *Seyfried,* the state now argues that the case is authority for instructing a jury on such a presumption. In view of our holding, *infra,* regarding the constitutional limitation upon a jury instruction stating such a presumption, we disapprove the state's interpretation of *Seyfried.*

2. The full text of Instruction No. 10 reads as follows:

YOU ARE INSTRUCTED That where a building is broken [sic] and entered and no lawful motive or purposes [sic] shown or appears, or any satisfactory or reasonable explanation given for such breaking and entering, the presumption arises that the breaking and entering were accomplished with the intent to commit larceny.

The presumption is effective only so long as there is no substantial evidence contradicting

Instruction No. 11 contained a hybrid reference to both an inference and a presumption. It said that "unexplained possession of recently stolen property raises an inference of guilt and may be enough by itself to justify a conviction of burglary." Like Instruction No. 10, however, it further said that "[t]he presumption is effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption...."[3]

The fundamental difference between an inference and a presumption is that an inference is permissive; a trier of fact may choose whether or not to draw it. A presumption, on the other hand, attaches definite probative value to certain facts. If the presumption is conclusive, it mandates a particular conclusion. If it is rebuttable, it mandates the conclusion in the absence of contradictory evidence. *See generally* 1 Wharton's Criminal Evidence § 90 (C. Torcia 13th ed. 1972).

In this case, Instruction No. 10—that intent to commit larceny would be presumed from forced entry, absent substantial evidence to the contrary—was, by its own terms, a statement of a rebuttable presumption. Instruction No. 11, as noted previously, referred to an "inference" of guilt, arising from unexplained possession of recently stolen property, but said that this "presumption" was effective so long as there was "no substantial evidence to the contrary." In our view, a jury reasonably could have interpreted this instruction to state a rebuttable presumption, similar to that contained in Instruction No. 10. We are constrained to examine these instructions with careful attention to the language actually used, and as reasonable jurors could have interpreted them. *See Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Accordingly, we will treat both instructions in this case as statements of rebuttable presumptions.

Williams challenges the constitutionality of these presumptions. The due process clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The state's burden of proof may not be diminished by a jury instruction stating a conclusive presumption. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Nor may a jury instruction contain a presumption that shifts to the defendant the burden of persuasion on an essential element of the state's case. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), where specific intent was an element of the crime charged, the United States Supreme Court

---

the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced.
The presumption need not be rebutted by affirmative proof or affirmative evidence, but may be rebutted by any evidence, or a lack of evidence, in the case. In order to find the defendant guilty of burglary, you must be satisfied beyond a reasonable doubt that the defendant entered the building with the intent to commit larceny.

**3.** The full text of Instruction No. 11 reads as follows:
YOU ARE INSTRUCTED That the unexplained possession of recently stolen property raises an inference of guilt and may be enough by itself to justify a conviction of burglary.

YOU ARE FURTHER INSTRUCTED in order to secure a conviction on the basis of such circumstantial evidence the burden is upon the State to identify the goods found in the defendant's possession as the same goods stolen in the burglary.
The presumption is effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced.
The presumption need not be rebutted by affirmative proof or affirmative evidence, but may be rebutted by any evidence, or lack of evidence, in the case. In order to find the defendant guilty of burglary, you must be satisfied beyond a reasonable doubt that the defendant entered the building with the intent to commit larceny.

held unconstitutional a jury instruction which stated simply that a person is presumed to intend the consequences of his voluntary acts. *See also State v. McCoy*, 100 Idaho 753, 605 P.2d 517 (1980). The court in *Sandstrom* said that a jury reasonably could have interpreted the presumption as either conclusive or rebuttable; and if they chose the latter interpretation, they reasonably could have perceived the effect of the presumption as shifting the burden of persuasion on the issue of intent. The court rejected an argument by the State of Montana—also made by the State of Idaho in the present case—that only the burden of producing evidence, rather than the burden of persuasion, would have been shifted. The court said:

> If Montana intended its presumption to have only the effect [of shifting the burden of production] ... then we are convinced that a reasonable juror could well have been misled by the instruction given, and could have believed that the presumption was not [so] limited.... [442 U.S. at 517, 99 S.Ct. at 2455.]

The Supreme Court in *Sandstrom* attributed the jury's potential confusion, in part, to lack of any qualifying instructions regarding the legal effect of the presumption. In contrast, the instructions in the present case reflect an effort by the district court to explain the effect of each presumption. Both instructions state that the presumptions could be rebutted by "substantial evidence," and that each presumption "is said to disappear when such contradictory evidence is adduced." The instructions further say that the presumptions could be rebutted not only by affirmative proof but by "any evidence, or lack of evidence, in the case." The jury also was informed, in general introductory instructions, that the burden of proof always rests on the state. The state now argues that this qualifying language insulates the present case from the impact of *Sandstrom*.

We disagree. The instructions before us do, of course, go beyond the *Sandstrom* instruction in an attempt to explain the presumptions. But the explanation is contradictory. The jury is informed, by Instructions 10 and 11, that a "presumption" is effective unless rebutted by "substantial evidence," and that it is said to disappear when "such contradictory evidence" is adduced—but that it may be rebutted by "any evidence" or "lack of evidence." In our view, a jury would have difficulty reconciling "substantial evidence" with "any evidence" or "lack of evidence." Instructions 10 and 11 leave doubt as to how the "presumptions" may be rebutted, and none of the instructions explains the difference between the burden of persuasion and the burden of producing evidence.

■ We do not believe the legal effect of each presumption was clarified by the district court's attempted explanation. Rather, the jurors could have been confused by the contradictory qualifying language, and may well have interpreted the instructions simply to mean that the presumptions would apply unless substantial evidence were presented to the contrary. Under such an interpretation, forced entry would be deemed proof of intent to commit larceny, and possession of recently stolen property would be deemed proof of participation in a burglary, unless there were a substantial showing otherwise. In practical terms, this interpretation would impose an evidentiary burden upon the accused to overcome each presumption, and could have the effect, in the minds of the jurors, of shifting the burden of persuasion on essential elements of the state's case.

We are mindful of the axiom that jury instructions should be considered as a whole. A judge or lawyer reading these instructions with a practiced eye, and relating each sentence to all modifying statements in the whole body of instructions, might perceive an effort by the district court to avoid shifting the ultimate burden of persuasion. But instructions are intended for jurors, not for judges or lawyers. If the instructions might reasonably be interpreted by laypersons to have a burden-shifting effect, they run afoul of a defendant's right to due process.

The instructions in this case stand in contrast to other instructions previously approved by the United States Supreme Court and by the Supreme Court of our state. In *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), no constitutional infirmity was found in an instruction authorizing the jury to draw a *permissive inference* that a person in possession of stolen property knew it was stolen. A similar instruction was upheld in *State v. Peterman,* 100 Idaho 269, 596 P.2d 442 (1979). Conversely, the Idaho Supreme Court has held unconstitutional an instruction stating that a person in possession of stolen property was *presumed* guilty of knowingly receiving such property. *State v. Trowbridge,* 97 Idaho 93, 540 P.2d 278 (1975). The *Trowbridge* opinion noted, with apparent disapproval, a prior drift in Idaho from upholding instructions on permissive inferences to upholding instructions on presumptions. *Id.* at 95–96, 540 P.2d at 280–81. We believe *Trowbridge* signalled an end to this drift.

Accordingly, we hold that the instructions on presumptions in this case were improper. They impermissibly infringed upon Williams' right to due process under the Fourteenth Amendment, by appearing to shift the burden of proof. The judgment of conviction must be reversed, and the cause remanded.

Upon remand, if a new trial is conducted, we direct the district court to charge the jury only upon permissive inferences, and to avoid reference to presumptions. *See, e.g., Wells v. People,* 197 Colo. 350, 592 P.2d 1321 (1979). As noted by Justice Rehnquist, specially concurring in *Sandstrom:*

> [S]urely if this charge had, in the words of the Court, "merely described a permissive inference" ... it could not conceivably have run afoul of the constitutional decisions cited by the Court in its opinion. [442 U.S. at 527, 99 S.Ct. at 2461.]

■ Further, in connection with Instruction No. 11, we direct the district court to refrain from informing the jury that possession of recently stolen property "may be enough by itself to justify a conviction of burglary." This language recites a standard which the Idaho Supreme Court historically has applied, in burglary cases, to review the sufficiency of evidence supporting a conviction. *E.g., State v. Ponthier,* 92 Idaho 704, 449 P.2d 364 (1969). However, we believe this standard of review has been discredited by *Barnes v. United States, supra,* and by *State v. Trowbridge, supra.*

■ In any event, a standard of appellate review should not be confused with proper instructions to the jury. An appellate court, faced with a verdict of guilt, is required to accept all justifiable inferences in support of the verdict; but it is for the jury to decide, in the first instance, whether to draw an inference, and how much weight to give it. *State v. Erwin,* 98 Idaho 736, 572 P.2d 170 (1977); *State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). Therefore, even if a conviction for burglary could be upheld on appeal, based upon an inference from possession of recently stolen property, it does not follow that the jury should be instructed on the sufficiency of the inference, by itself, to establish guilt. Such language may distract the jury from its basic function—to determine, from *all* the evidence, whether the state has proven beyond a reasonable doubt each of the elements of burglary. *Compare, e.g., Wells v. People, supra.* Although Instruction No. 11 includes reference to this basic task, the jury might be confused by the apparent countercurrents in the instruction. In our view, the better practice is not to comment upon the weight or sufficiency ascribed to the inference. *Cf. Elliott v. Lee,* 71 Idaho 242, 229 P.2d 1000 (1951) (upholding refusal, in a civil case, to give an instruction commenting on weight or effect of evidence).

## II

### A. *Proposed Instructions*

■ We now turn to Williams' assertion that the district court should have given his proposed instructions on circumstantial evidence and proof of a defendant's identity. The proposed instruction on circumstantial evidence merely said that a conviction must

be based upon substantial evidence rather than upon suspicion, and that circumstantial evidence must be inconsistent with any reasonable hypothesis of innocence.[4] The proposed instruction was in accord with Idaho law. *E.g., State v. Erwin,* 98 Idaho 736, 572 P.2d 170 (1977); *State v. Baker,* 103 Idaho 43, 644 P.2d 365 (Ct.App.1982). However, we believe its subject matter was embraced by another instruction actually given. The district court's Instruction No. 2 outlined the reasonable doubt standard, and then specifically admonished the jury as follows:

> The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.... If the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should of course adopt the conclusion of innocence.

We hold that Instruction No. 2 adequately covered the subject matter and that the district court did not err in refusing to give Williams' proposed instruction.

The district court also refused to give an instruction, proposed by Williams, emphasizing the state's obligation to prove beyond a reasonable doubt that the defendant was the person who committed each offense charged.[5] Williams argues that special emphasis on proof of identity was required because he was linked to the alleged burglaries only through circumstantial evidence. The proposed instruction was based upon California Jury Instructions—Criminal (CALJIC) No. 2.91. The CALJIC annotations and commentary reveal that use of this instruction is discretionary and that, in

any event, it should be restricted to cases where the evidence of identification includes the testimony of eyewitnesses. 1 CALJIC § 2.91, pp. 81–82, and 1980 Supp.

 Of course, a defendant's identity, as the perpetrator of an alleged crime, is always an issue in a criminal prosecution. However, the record before us discloses no special controversy about identification, as opposed to the other required elements of the state's case. The jury was adequately instructed on the general requirement of proof beyond a reasonable doubt. We conclude that the district court did not err by refusing Williams' proposed instruction focusing exclusively on identification.

### B. *Admission of Evidence*

Williams was charged with burglary of the Harwood Drug store, and with aiding and abetting a burglary of the Mullan Drug store, both in Mullan, Idaho. At trial, a sheriff's deputy was permitted to express his lay opinion that the color of paint found on tools in the trunk of Williams' car was the same as the color of paint scrapings taken from a door to the Harwood Drug building. The prosecution also was allowed to introduce an exhibit consisting of a bottle, allegedly stolen from the Mullan Drug store, which contained some pills and carried a "Mullan Drug" label. Williams challenges the admissibility of the testimony and of the pill bottle. We first consider the question of lay opinion testimony.

The traditional rule in Idaho has been that a witness may testify only as to concrete facts within the scope of his own observation, common knowledge and recol-

---

4. The full text of Defendant's Requested Instruction No. 7 reads as follows:

It takes more than a mere suspicion to convict a person of a felony. There must be substantial evidence, either direct and positive, or circumstantial. Circumstantial evidence must be not only consistent and compatible with the guilt of an accused, but it must also be inconsistent with any reasonable theory of his innocence.

5. The full text of Defendant's Requested Instruction No. 3 reads as follows:

You are instructed that the burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of defendant as the person who committed the offense before you may convict him. If, for the circumstances of the identification, you have a reasonable doubt whether the defendant was the person who committed the offense, you must give the defendant the benefit of the doubt and find him not guilty.

lection—as distinguished from his opinions. *Bean v. Diamond Alkali Co.,* 93 Idaho 32, 454 P.2d 69 (1969); *see also* G. Bell, Handbook of Evidence for the Idaho Lawyer 57 (1972). However, an exception to this rule has evolved. Our Supreme Court has held that a trial court, in its discretion, may allow a lay witness to state an impression or conclusion about a matter of fact within his knowledge. *State v. Cutler,* 94 Idaho 295, 486 P.2d 1008 (1971); *Howard v. Missman,* 81 Idaho 82, 337 P.2d 592 (1959). We have adopted this exception to the traditional rule. *State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). Consequently, we do not deem the deputy's comparison of paint colors to be inadmissible merely because it was stated in the form of an opinion.

■ However, all opinion testimony—whether lay or expert—is subject to the restriction that opinions should not extend to factual matters capable of being presented fully to the triers of fact.

> It is for the jury or the court, as the case may be, whenever the question is one which can be decided by ordinary experience and knowledge, to determine the truth as to the evidential facts from the facts stated by the witnesses, and to draw the conclusions deducible from such evidential facts by the exercise of their own judgment and reasoning powers without hearing the opinions of witnesses.

*Sturgis v. Garrett,* 85 Idaho 364, 368, 379 P.2d 658, 660 (1960) (quoting with approval 20 Am.Jur. *Evidence,* § 765, pp. 635–56). In this case, the tools upon which paint allegedly was found, and the paint scrapings taken from the Harwood Drug door, were received in evidence. If a new trial is conducted on remand, lay opinion testimony, comparing the paint colors, should not be allowed if the trial judge determines that the jurors themselves can make such a comparison from the exhibits in evidence.

We turn next to the admissibility of the pill bottle and its contents. Two law enforcement officers testified at trial that the bottle was found in Williams' car. The proprietor of Mullan Drug positively identi-

fied the bottle as coming from his store. However, he stated that the bottle probably had been empty when removed from the premises, that the pills had not come from his store, and that he did not know what the pills were. Williams now argues that the bottle and its contents should have been excluded from evidence for lack of relevance.

■ Our review of the record reveals that Williams did not raise the issue of relevancy at trial. Rather, he interposed an objection based solely upon the state's alleged failure to establish the chain of custody of the exhibit. The objection was overruled; and the district court's action in that regard has not been challenged. Thus, the question of relevancy has been raised for the first time on appeal. In a criminal case, we will not examine a question raised in this fashion, unless it is shown that "fundamental error" at trial deprived the defendant of due process. *E.g., State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971); *State v. Baker,* 103 Idaho 43, 644 P.2d 365 (Ct.App. 1982). Because we have reversed the judgment of conviction on both counts, we need not decide whether such a deprivation occurred here.

■ For guidance on remand, however, we note that a proferred item of evidence is relevant if it is probative of a matter at issue in the case. G. Bell, Handbook of Evidence for the Idaho Lawyer 106–07 (2d ed. 1972). The bottle was the fruit of an alleged larceny committed incident to the burglary charged. It was plainly relevant and admissible in evidence. *State v. Peterson,* 87 Idaho 147, 391 P.2d 846 (1964). In contrast, the pills were not connected to any crime. If a new trial is conducted on the Mullan Drug burglary charge, the district court should admit the pills in evidence only if it appears that they may have independent probative value on a matter at issue in the case. *Compare Alexander v. United States,* 354 F.2d 59 (5th Cir. 1965).

**644**

## C. Sufficiency of Evidence

Williams contends that the district court erred by denying his motion for judgment of acquittal on both counts of burglary. We decline to address this contention, in light of our reversal of the judgment of conviction. However, Williams also maintains that he never should have been tried on the charge of aiding and abetting a burglary of the Mullan Drug store, because the state failed to establish probable cause on that charge at a preliminary examination before a magistrate. Because this assertion goes to the propriety of retrying the charge on remand, we will address it here.

▮ The state argues that the evidence was sufficient to establish probable cause but that, in any event, a judgment of conviction should not be disturbed for failure to establish probable cause at a preliminary examination. Regarding the latter point, the state relies upon *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Gerstein* the Supreme Court held that the Fourth and Fourteenth Amendments to the United States Constitution required a judicial determination of probable cause for pretrial detention of a defendant, but noted that a subsequent conviction would not be vacated solely upon the ground that the defendant had been detained without a determination of probable cause. 420 U.S. at 119, 95 S.Ct. at 865–866. Thus, a defendant may invoke the federal constitution to challenge his detention without probable cause before conviction, but may not do so after a judgment of conviction has been entered.

▮ However, a defendant's remedies in Idaho are not confined to those attending rights secured by the federal constitution. Article 1, Section 8, of the Idaho Constitution requires a grand jury indictment or commitment by a magistrate before any person may be tried on a felony charge. This requirement has been held jurisdictional. *State v. Ruddell,* 97 Idaho 436, 546 P.2d 391 (1976); *State v. Braithwaite,* 3 Idaho 119, 27 P. 731 (1891). The Idaho Legislature has prescribed a probable cause standard for commitment by a magistrate after a preliminary examination, and has provid-

ed that the sufficiency of evidence at the preliminary examination may be challenged by a motion to dismiss, submitted to the district court. I.C. §§ 19–804, 815, 815A. The Idaho Supreme Court has reviewed denial of such motions, on appeal from judgments of conviction subsequently entered. *See, e.g., State v. Owens,* 101 Idaho 632, 619 P.2d 787 (1980); *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980). Thus, it appears that the Idaho Constitution, the implementing statutes, and the interpretive case law have extended the time for reviewing challenges to the sufficiency of proof of probable cause, beyond the conviction cutoff imposed for federal constitutional challenges under *Gerstein.* Accordingly, we will review the district court's denial of Williams' motion to dismiss the charge relating to the Mullan Drug store.

▮ Our Supreme Court has utilized an "abuse of discretion" standard in reviewing a magistrate's commitment. *See, e.g., Carey v. State,* 91 Idaho 706, 429 P.2d 836 (1967). The underlying structure of this standard is articulated in *Martinez v. State,* 90 Idaho 229, 232, 409 P.2d 426, 427 (1965):

> The state is not required to produce all of its evidence at a preliminary examination; if it produces enough to satisfy the committing magistrate that a crime has been committed and that there is reasonable or probable cause to believe the accused committed it, it is the duty of the magistrate to hold the accused for trial. The words "reasonable or probable cause" mean such evidence as would lead a reasonable person to believe the accused party has probably or likely committed the offense charged.

We hold that a magistrate's commitment will not be deemed an "abuse of discretion" —and, therefore, a district judge's denial of a motion challenging probable cause will not be disturbed on appeal—if under any reasonable view of the evidence, including permissible inferences, it appears likely that an offense occurred and that the accused committed it. *Compare State v. O'Mealey,* 95 Idaho 202, 506 P.2d 99 (1973).

At the preliminary examination in this case, a witness testified that, in the early morning hours of the day when both alleged burglaries occurred, he saw an automobile—later identified as belonging to Williams—parked in front of the Mullan Drug store. The hood was up, and a person appeared to be working on the engine of the car. The witness saw a second person run from the doorway of the store to the car. The first person closed the hood, both individuals jumped in the car, and they drove away. The witness contacted the police and furnished a license number and description of the vehicle. Another witness, a law enforcement officer who had heard a police broadcast concerning the vehicle and a reported burglary, testified that he responded as a "backup" to assist a patrolman who had stopped the vehicle. Williams identified himself as the driver of the subject vehicle, and gave the witness consent to search it. The witness testified that his search revealed the pill bottle labeled "Mullan Drug."

Williams does not attack directly the sufficiency of evidence to show probable cause. Rather, he asserts that testimony about the words "Mullan Drug" on the bottle label violated the "best evidence" rule, because the bottle itself was not introduced at the preliminary examination. He further contends that any reference to the broadcast information about a reported burglary was inadmissible hearsay.

We believe Williams' assertion regarding the label is inapposite to a preliminary examination. A finding of probable cause need only be based upon "substantial" evidence.[6] Preliminary examinations are less formal than trials. They are not subject to the same precise application of rules of evidence. *E.g., State v. Linn,* 93 Idaho 430, 462 P.2d 729 (1969); *Freeman v.*

*State,* 87 Idaho 170, 392 P.2d 542 (1964). The "best evidence" or "original writing" rule merely states a preference in favor of original written instruments—as opposed to copies, testimony, or other secondary sources of information—to prove the terms of a writing. *See generally* W. McCormick, Handbook of the Law of Evidence § 229-31 It is intended to foster accuracy in the presentation of evidence found in such writings. G. Bell, Handbook of Evidence for the Idaho Lawyer 208 (2d ed. 1972). The rule permits introduction of such secondary evidence if the original is unavailable. Nothing in the rule suggests that such secondary evidence is not "substantial."

Thus, the question simply is whether the preference for original writings should apply to preliminary examinations. In view of the relatively informal character and limited purpose of such proceedings, we decline to impose the rigors of preference upon them. We hold that secondary evidence may be used in preliminary examinations, unless a question concerning the accuracy of the evidence can be resolved only by presentation of the original writing. No question of this nature was raised in the instant case. We conclude that testimony concerning the words "Mullan Drug" on the label was properly allowed and considered by the committing magistrate.

With respect to testimony about information conveyed over the police radio, Williams argues that the broadcast reference to a burglary was the only evidence presented at the preliminary examination to show that a burglary had occurred. He contends that the testimony should have been excluded as hearsay. I.C.R. 5.1(b), *infra* n. 6, limits the use of hearsay evidence. Assuming, without deciding, that

---

**6.** I.C.R. 5.1(b) states, in pertinent part:

The finding of probable cause shall be based upon substantial evidence upon every material element of the offense charged; provided that hearsay in the form of testimony, or affidavits, may be admitted to show the existence or non-existence of business or medical facts and records, judgments and convictions of courts,

ownership of real or personal property and reports of scientific examinations of evidence by state or federal agencies or officials, provided the magistrate determines the source of said evidence to be credible. Provided nothing in this rule shall prevent the admission of evidence under any recognized exception to the hearsay rule of evidence.

the testimony referring to the broadcast report of a burglary was inadmissible hearsay, we still are not persuaded that the finding of probable cause was erroneous. We believe a magistrate reasonably could have viewed the remaining evidence regarding the conduct of Williams and the other individual at the Mullan Drug store, and the subsequent discovery in Williams' car of a pill bottle bearing the store's label—together with permissive inferences—as indicating that a burglary likely had occurred and that Williams participated in it. Accordingly, we conclude that the magistrate did not abuse his discretion by holding Williams for trial on that charge.

### III

The prosecutor's information accused Williams not only of participation in two burglaries but also of being a "persistent violator" under I.C. § 19–2514. This statute provides, in pertinent part, as follows:

> Any person convicted for the third time of the commission of a felony, whether the previous convictions were had within the state of Idaho or were had outside the state of Idaho, shall be considered a persistent violator of law.

In a separate trial on the persistent violator charge, the state presented authenticated copies of four judgments entered by courts in Washington, showing convictions on two counts of second degree burglary, one count of delivery of a controlled substance, and one count of second degree possession of stolen property.[7] A jury found Williams to be a persistent violator, but the district court subsequently entered an order dismissing the charge because the state's evidence had failed to show that the prior convictions were for felonies under Washington law. The state has cross-appealed the order of dismissal.

The laws of a foreign jurisdiction may be established in the courts of this state by two methods. Statutes may be proved by submission of the printed books or pamph-

lets purporting on their face to contain such statutes. I.C. § 9–304. More generally, any law entered in an official record may be proved by submission of an authenticated copy of the record itself. *See* I.R.C.P. 44(a) (made applicable to criminal proceedings by I.C.R. 26). In this case, the prosecution did not introduce in evidence, before or during trial on the persistent violator charge, the Washington statutes or an official record containing them.

On appeal, the state argues that this oversight was harmless. Our attention is invited to the general principle that, absent proof to the contrary, a court will assume that the law of a sister state is the same as that which prevails here. *See, e.g., State v. Martinez,* 43 Idaho 180, 250 P. 239 (1926). However, we believe this principle should not be applied to the state's burden of proving persistent violator status. I.C. § 19–2514 has been construed to require that the prior convictions, upon which persistent violator status is asserted, must be for felonies under the laws of the state where the conviction was entered. *State v. Prince,* 64 Idaho 343, 132 P.2d 146 (1942). *Compare, e.g., State v. Lott,* 73 N.M. 280, 387 P.2d 855 (1963) (illustrating a contrary result where a New Mexico persistent violator statute expressly allowed the prior offenses in other states to be either misdemeanors or felonies under the laws of those states, so long as they would have been felonies if committed in New Mexico). Our Supreme Court in *Prince* said it was immaterial, under the Idaho statute, whether the convictions in other states were for crimes that would also have been felonies under Idaho law, so long as they were felonies where the offenses occurred. Commenting on the public policy embodied by the Idaho statute, our Supreme Court said, "Good citizenship requires obedience and observance to the laws of sister states as much as those of this state." *Prince,* 64 Idaho at 350, 132 P.2d at 149.

---

7. It appears that the conviction for delivery of a controlled substance was later reversed on appeal, due to lack of a speedy trial. *See State v. Williams,* 85 Wash.2d 29, 530 P.2d 225 (1975).

This language plainly imputes to our persistent violator statute a policy of measuring a defendant's conduct against the standards prescribed by the laws of the state where each prior offense was committed. Were we to apply the general principle advanced by the state in this case, Williams' prior conduct would be measured by Idaho law unless Washington law were affirmatively shown to be different. We believe this would be inconsistent with the thrust of *Prince.* Moreover, in some circumstances, it might create a rebuttable presumption shifting the burden of proof to the defendant. Although we recognize that persistent violator status is not a separate crime, it is pleaded in the same fashion as a crime and must be proved beyond a reasonable doubt. *State v. Polson,* 93 Idaho 912, 478 P.2d 292 (1970), *cert. denied,* 402 U.S. 930, 91 S.Ct. 1527, 28 L.Ed.2d 863 (1971); *State v. Martinez,* 102 Idaho 875, 643 P.2d 555 (Ct.App.1982). The constitutional limitation upon burden-shifting presumptions, examined in the first part of this opinion, would apply by analogy. Consequently, we sustain the district court's determination that the state failed to make a required showing, as part of its prima facie case on the persistent violator charge, that the prior convictions were for felonies under the laws of the state where the offenses occurred.

The state further argues that, even if the prosecution's evidence were held insufficient, an order for new trial would have been an appropriate response to Williams' motion to dismiss the persistent violator charge. This contention has generated much controversy on appeal, as to whether Williams' constitutional right against double jeopardy would be violated by a second evidentiary hearing on persistent violator status. We deem it unnecessary to address this issue. The district court did not, in fact, order a new trial; it dismissed the charge. The question on appeal simply is whether the court acted properly in so doing.

The state invites our consideration of *State v. Polson, supra,* where a new trial on persistent violator status, following reversal of an adjudication of such status in an earlier appeal, was approved. However, a careful reading of that decision and of a prior decision in the same case—*State v. Polson,* 92 Idaho 615, 448 P.2d 229, *cert. denied,* 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969)—reveals that reversal of the first adjudication of status was necessitated by remand of a concurrent felony conviction upon which the state had relied for its third felony conviction under I.C. § 19–2514. The new trial was also necessitated by a determination, on the first appeal, that the trial court had erred in admitting certain evidence offered to establish one of the prior felonies. In the instant case, however, the state did not rely on the burglary charges to provide felony convictions under I.C. § 19–2514; nor was the state's proof of prior convictions found sufficient by the district court for an adjudication of persistent violator status.

In our view, the appellate decisions in *Polson* simply demonstrate that a new trial may be held, after an adjudication of persistent violator status, if that adjudication is overturned on appeal as having been based upon inadmissible evidence. The propriety of a new trial in such circumstances affords no basis to suggest that a district court, faced in the first instance with failure to prove a necessary element of the state's case, is relegated solely to ordering a new trial. Rather, we perceive no impediment under the persistent violator statute, nor under the Idaho Criminal Rules, to dismissing the charge if the evidence is insufficient. We conclude that the district court did not err by dismissing the persistent violator charge, upon the evidence presented.

The judgment of conviction, for two counts of burglary, is reversed; and the cause is remanded. The order dismissing the persistent violator charge is affirmed.

WALTERS, C. J., and SWANSTROM, J., concur.