Vernon Allen WEBER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13396.

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1964.

Paul R. Haunstein, Enid, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh Collum, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Vernon Allen Weber was charged by information in the District Court of Major County, Oklahoma of the crime of Larceny of a Domestic Animal. He was tried by a Jury who found him guilty and assessed his punishment at three years in the State Penitentiary. From the Judgment and Sentence rendered in accordance with the verdict of the Jury a timely appeal was perfected to this Court. This matter was set for Oral Argument on the 12th day of September. 1963, and the cause was submitted on the record. Before trial court and in the petition in error the defendant contends that the evidence adduced was insufficient to support the verdict of the Jury, for the reason that the State proved only that the defendant was in possession of recently stolen

livestock and that this fact standing alone is not sufficient to support the verdict of the Jury.

Briefly, the facts adduced on the trial reveal that Stephen Tripp is the owner of a one-half section of land, situate eleven miles southwest and one-half mile north and one-half mile west of Fairview, Oklahoma. Prior to November 23, 1962, he kept a number of cattle thereon; these cattle, for the most part, were black angus, with a few white face grade cattle. Included among the black angus cattle was a three month old calf weighing approximately 300 pounds. Tripp testified that shortly before eight o'clock on the morning of the 23rd of November, 1962, he went to the pasture above described and fed the cattle; testified that the black angus calf was in that portion of the pasture, approximately one-half mile from the road and that after feeding the cattle he drove to the sales arena in Fairview, Oklahoma, where he was employed on the outside of the sales barn receiving incoming cattle to be sold at the sale. His testimony, and the testimony of State witnesses, Glenn Church, and Ernest Frazier, was, that on November 23, 1962, very few cattle were brought to the sales arena in Fairview. None of the witnesses had seen the defendant, Vernon Allen Weber, in or around the sales barn area on that day. After the sale, Mr. Tripp returned to his home but did not return to the pasture until the next morning, sometime before noon. The black calf was missing and carefully examining the fence near the road, Tripp found black hair on the fence under which the ground was disturbed, from which he concluded the calf had crawled underneath the fence. This conclusion was further strengthened when he found the hoof prints of a small calf outside the fence and along the bar ditch; he followed these tracks to a location approximately three quarters of a mile from that point, where hoof prints of the calf led from the bar ditch to a bank near the road some two and one-half feet higher than the road surface. The ground at this location near a fence post was disturbed as if the calf had been hog-tied there, and on the fence post was a rope mark. There were shoe prints in the road area near the post, which were clearly visible; some of the prints were of the type made by a mans shoe of ordinary size and the others were of a small size ladies shoe with a corrugated sole. On the roadway adjacent to the fence and in the bar ditch near the bank were four distinct tire prints, which the testimony of States witnesses (later summoned to the scene) and Tripp, described as follows:

"* * * The left hand front tire was smooth and the other tires all had good tread. The right hand tires had six grooves front and rear. The left rear tire was a five groove tire and this one tire on the front end was just as smooth as could be." Casemade, pages 18 & 19.

Mr. Tripp notified authorities that the calf was missing and on November 26th, after having received a call from authorities proceeded to the home of the defendant, Weber. Upon arriving there he went to the defendant's barn where he recognized the black angus calf. Weber claimed that he had purchased the calf in question, and another in the sales area at Fairview at approximately 12:30 P.M. on the afternoon of November 23, 1962, and when asked why he had notched the left ear of the calf, stated that his neighbor had a number of calves of the same color as his stock, and that in order to avoid confusion he had notched the ears of the two calves purchased near the sales area on November 23rd. He stated that he did not know the name of the man from whom he had purchased the two calves, but described him as being approximately six feet tall, dressed in a black cowboy hat and blue jeans and boots. He described the truck driven by the supposed owner of the calves, as an old model one-half ton pickup truck, dark blue or black in color. Defendant asserted that he had paid the sum of $125.00 in cash for the two calves and that at the time of making the purchase he was accompanied by his

wife and children. The defendant stated that after purchasing the calves he proceeded to his home and that while enroute there he met a car driven by his grandmother, Mrs. Bessie Evans, that both parties stopped their cars and Mrs. Evans, walked to the back of his pickup and petted the black angus calf. Mrs. Evans testimony was in substantial accord with that of the defendant, as was that of his five year old son.

While at Weber's barn on the afternoon of November 26, 1962, Tripp, and other State witnesses examined the tires of the defendant's 1952 Mercury passenger car. They stated that the tread on the tires were identical to the four tire tracks described above and found at the location from which the calf was apparently taken. States witnesses also testified that they, on this occasion, observed Mrs. Weber's shoes; stated that she was wearing small size shoes with corrugated soles which left a print similar to those found near Tripp's farm. The black calf was loaded into the truck and the defendant, Tripp, Diercks and Vincent, Local Authorities, proceeded to the Tripp pasture, where upon being released, the black angus calf sought the mother cow out and commenced nursing. Those of the witnesses familiar with livestock, testified that a mother cow would not allow a 300 pound calf, other than her own, to nurse her. Defendant was placed under arrest, taken to the county jail and charged with the Larceny of the Calf. His testimony was in substantial accord with the statement made to Tripp and the officers on the day of his arrest.

Warden Dow testified that on the evening of November 23, 1962 he had occasion to drive by the Tripp pasture at approximately 7:30 P.M., and that when driving by he observed a black angus calf, weighing approximately 300 pounds, outside the Tripp fence, apparently attempting to get under the fence and return to the pasture. He testified that since Mr. Tripp was the only farmer living in the area who raised black cattle, he assumed the black calf belonged to Mr. Tripp.

While testimony adduced by the defendant and the State is sharply conflicting, we are of the opinion that the testimony adduced on the trial presented more than possession of recently stolen property, in addition to this there was evidence that: (1) the calf in question had been observed near the Tripp pasture seven hours after the time defendant claimed to have purchased the calf in Fairview. (2) the tire marks near the Tripp ranch were identical to the tread on the 1952 automobile owned by defendant Weber. (3) the shoe print of the ladies shoe found near the Tripp farm closely resembled the corrugated print left by the shoe that Mrs. Weber was wearing on November 26, 1962. (4) although Weber claimed to have purchased the calf near the Sales Arena in Fairview, at 12:30 P.M. on November 23, 1962, employees of the sale did not see him on that day. (5) the defendant allegedly purchased two calves for the sum of $125.00 in cash, from a man he did not know and whose name he did not bother to inquire about. These and other circumstances presented on the trial together with possession of the recently stolen calf were properly submitted to the Jury for their consideration; for as was stated in Watkins v. State, Okl.Cr., 351 P.2d 317:

"Questions of fact are for the sole determination of the jury and their finding will not be disturbed on appeal where there is any evidence reasonably tending to support the verdict."

"Where the accused has possession of recently stolen property, and attempts to explain its possession, the burden of proving the truthfulness of his possession is on him, and even though it may be reasonable, is a question of fact for the jury."

In view of the record here presented, and under the authority of Watkins v. State, supra, we are of the opinion that the Judgment and Sentence appealed from should be and the same is hereby Affirmed.

Affirmed.

JOHNSON, P. J., and NIX, J., concur.