Don GIRDNER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17826.

Court of Criminal Appeals of Oklahoma.

March 27, 1973.

Howard R. Mefford, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, hereinafter referred to as defendant, was charged, tried and convicted by jury in the District Court of Okmulgee County, Case No. CRF 71-1, for the offense of Larceny of Domestic Animals. The defendant's punishment was assessed at five (5) years imprisonment and from said judgment and sentence, the defendant has made a timely appeal to this Court. Judgment and sentence affirmed.

The first witness for the State was Mr. Ray Thomason, a teacher and rancher from Okmulgee, Oklahoma, who testified to facts regarding the loss of thirty-one head of cattle from his cattle feedlot near Morris, Oklahoma, in Okmulgee County, on or about the 29th or 30th day of December 1970. Mr. Thomason's testimony was to the effect that he gave no one permission to take the thirty-one head of cattle; and that the cattle were last seen by his son, John Thomason, at approximately 7:00 p. m. on the evening of December 29, 1970. Mr. Thomason related that the only physical evidence was some red paint that was found on the front of the feedlot loading chute except for the tracks of a heavy truck that had apparently backed up to the loading chute. Mr. Thomason further testified that he was able to identify the cattle that had been stolen as the same cattle which were sold at the Vinita Sales Barn in Craig County, Oklahoma, to ranchers in Hollis, Oklahoma, and at Fredonia, Kansas.

John Thomason, son of Mr. Ray Thomason, substantiated the facts testified to by Ray Thomason and gave further information as to the identification of the cattle which were stolen from the feedlot.

Two Vinita Sales Barn employees, Leonard Garrison and Fritz Ray, identified the defendant as having delivered thirty head of cattle to the Vinita Sales Barn on the 30th day of December 1970, at approximately 7:00 a. m. in a truck with a red colored bed. The two further testified that the thirty head of cattle were later placed, and identified, at ranches in Hominy, Oklahoma, and Fredonia, Kansas, as being the cattle taken from the Thomason feedlot in Okmulgee, Oklahoma.

Mr. Henry Johns testified that during the latter part of December 1970 he was stopped by a person near Morris, Oklahoma, and was asked directions to the residence of one Martha Burke; that the person who stopped him was driving a 1969 or 70 black Chevrolet pickup; and that the person driving the pickup was the defendant, Don Girdner. However, Mr. Johns was unable to identify or give a description of the passenger in the pickup.

From testimony at the trial it was established that a check from the Vinita Sales Barn was mailed to the defendant at his

address in Tulsa, Oklahoma, which was cashed by the defendant at the Community State Bank in Tulsa.

The evidence of the defendant consisted of four witnesses, all of whom were employed by Safeway Stores, Inc. and consisted of testimony regarding the whereabouts of the defendant at various times of the day of the theft of the cattle that were stolen from the feedlot on the Thomason ranch.

Mr. J. K. Cronister testified that he was the personnel manager of Safeway Stores, Inc. and that the defendant was employed by Safeway Stores as a truck driver, and he was so employed in the month of December of 1970. Mr. Cronister further testified that he was in charge of certain books and records of the Safeway Stores, Inc., including the time card and log card, as well as the trip tickets of the defendant, which included the date of December 30, 1970; and that the time card revealed that the defendant clocked in at 5:46 a. m. on December 30; and that he clocked out at approximately 2:30 p. m. of the same day. The log card and trip tickets were stated to be a record that shows the truck that was driven by a particular driver, the time that he checked in, the merchandise which was hauled, and the time that the person would leave the warehouse and arrive at a particular store with a quantity of goods. The log card and trip tickets of the defendant, for the date of December 30, 1970, were introduced into evidence and showed that the defendant had warmed up his truck from approximately 6:00 a. m. to 6:30 a. m. on that date; that at 6:30 a. m. the defendant left for Safeway store number 515 in Bartlesville, Oklahoma, and arrived at the Bartlesville store at approximately 8:30 a. m. whereupon he left store number 515 at 9:15 a. m. and arrived at Safeway store number 458 in Bartlesville at 10:00 a. m.

Mr. John Bartlett, manager of Safeway store number 515 in Bartlesville, testified that on the 30th day of December 1970 he saw the defendant at the Safeway store number 515 at approximately 9:30 a. m. as he was climbing in his truck in preparation to leave.

Mr. Robert Roughton, produce manager for Safeway store number 458 in Bartlesville, testified that the defendant delivered a certain quantity of produce to store number 458 on December 30, 1970; that he had a conversation with the defendant and another driver by the name of Fred Dacus about 10:00 a. m.

Mr. Roughton's testimony was substantiated by the testimony of Mr. Fred Dacus.

Defendant and the State of Oklahoma entered into a stipulation that if a certain Mr. Kenneth Luster, who was subpoenaed by the State, were present to testify, he would testify to the effect that he works for Safeway Stores, Inc.; and that he is the dispatcher at the Tulsa warehouse; that he was so employed on the 30th day of December 1970; and that he would testify that he observed the defendant, Don Girdner, at his regular assigned work station at approximately 5:45 a. m. the same morning.

At this time the defendant rested his case and the State presented the rebuttal evidence of Mr. Jack Carter, Deputy Sheriff of Bartlesville, Oklahoma, who testified that he drove his 1970 automobile from the Vinita Sales Barn to the Safeway store in Bartlesville, a distance of approximately 42 miles at a speed between 50 and 55 miles per hour and that it took him approximately 50 minutes to make this trip. He further testified that he drove from Tulsa to Vinita on the four-lane turnpike in the same automobile driving between 55 and 60 miles per hour and that this trip took him approximately 50 minutes one way.

The defendant's first proposition of error asserts that the Assistant Attorney General committed reversible error when he made direct comments in the presence of the jury on the defendant's failure to take the stand. Defendant's brief sets out four different statements made by the prosecution during the trial and during closing argument, as the basis for this

proposition of error. One of the statements was assertedly made during the evidentiary stage of the trial proceeding, and the other three were made during the closing argument for the prosecution. These will be discussed separately.

■ The first statement on which defendant predicates error appears at page 147 of the transcript of testimony. When the prosecutor completed certain voir dire questions of defense witness J. K. Cronister, the prosecutor stated:

"Your Honor, we would object on the basis that this is a self-serving declaration and they are attempting to do indirectly what they cannot do directly. If he wants to put the defendant on the stand and have him testify . . ."

Defense counsel interrupted the prosecutor and moved for a mistrial, which was denied. By his voir dire questions, the prosecutor determined that the records, to which the witness was making reference and which assertedly reflected when the defendant left a given point and arrived at his subsequent location, were actually filled in by the defendant himself; and at the time the statement was made by the Assistant Attorney General, it was not known whether the defendant was going to testify in his defense or not. In the opinion of the Court, the objection by Mr. Naifeh was in good faith, was not intended as a "harpoon", and it did not prejudice the defendant in such a manner as to require reversal in and of itself.

In two Texas decisions with similar fact situations to the present action arising out of statements made to the jury in reference to the defense's failure to take the stand made at the evidentiary stage of trial, the Texas Court of Criminal Appeals held in Gatlin v. State, 72 Tex.Cr. 516, 163 S.W. 428 (1914):

"At the time this remark was made, the district attorney could not and did not know whether or not Martin Gatlin (defendant) would testify. It was an incident of the trial, and not intended, and could not be construed by the jury as

criticising or commenting upon the failure of the defendant to testify."

Also, in Wilkerson v. State, 119 Tex.Cr. R. 4, 45 S.W.2d 201 (1932), the Texas Court stated:

". . . In regard to the second objection, it appears that the incident occurred during the development of the case and at a time when it was impossible to know whether or not the defendant would take the stand as a witness in his own behalf. We cannot regard the statement of the district attorney as a reference to the failure of the defendant to testify under these circumstances . . ."

We are of the opinion that the mere oblique reference to the failure of the defendant to take the stand was made at a time when the prosecutor could not possibly have known whether the defendant would testify or not. In such instances, where the comment is made in the evidentiary stage of trial, as it arose in this case, the remark could not be construed as a comment on the defendant's failure to testify in that his failure has not yet become a fact.

■ The three statements made during the closing argument of the prosecution are as follows:

Mr. Naifeh at page 195 of the transcript stated:

"The chain hasn't been broken by the Defendant."

Mr. Naifeh again at page 195:

"The testimony has not been denied or contradicted by the Defendant in this case."

Mr. Naifeh at page 198 of the transcript stated:

"This was not contradicted by him."

Mr. Webb stated at page 210 of the transcript:

"We put him in Vinita, selling the cattle and not one word of testimony denying it. We put him in the bank the next day cashing his check for these cattle. Not one word of testimony denying it."

These quotes, made during the closing argument of the prosecution, were not made for the purpose of calling the jury's attention to the defendant's failure to take the stand. Instead, they referred to Defense's total failure to disprove the State's evidence. Further, error in regard to these four statements was not properly preserved in the record of the trial court on this appeal. The remarks were not objected to by the defendant at trial and are therefore not properly before the Court on this appeal. As we stated in Cummings v. State, 57 Okl.Cr. 428, 48 P.2d 879 (1935) wherein the second syllabus by the Court said:

"To preserve the question of alleged misconduct of the county attorney in his argument to the jury, the attention of the court should be called to the argument at the time by proper objection and a ruling had thereon and an exception to the adverse ruling reserved and the same assigned as error in the motion for new trial and the petition in error. When this is not done, the question is not presented to this court for review."

This concept was restated in Neal v. State, Okl.Cr., 506 P.2d 936 (1973) wherein the fifth syllabus of the Court held:

"When an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error."

The defendant's second proposition of error asserts that the evidence was insufficient to sustain a conviction for Larceny of Domestic Animals. In the very re-cent decision of Box v. State, Okl.Cr., 505 P.2d 995 (1973), this Court affirmed a judgment and sentence of four years in a Larceny of Domestic Animals case and in the body of the opinion the following language appears:

"For the evidence to support a conviction, it is not necessary that there be any eye witness to the actual theft, or a witness who can place the defendant at the scene of the crime. In Cheeves v. State, 18 Okl.Cr. 480, 196 P. 726 (1921), this Court observed:

'In order to establish the defendant's guilt it was not necessary that any of the witnesses should have seen him or his codefendants in the vicinity of the premises about the time the larceny was committed. It rarely happens that perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must therefore ordinarily be had to circumstantial evidence.'

"We find that the evidence presented by the State, if believed, sufficiently proved the State's position. It is the fundamental rule that where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility, and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. Roberts v. State, Okl.Cr., 479 P.2d 623, 624 (1971)."

In Weber v. State, Okl.Cr., 389 P.2d 932 (1964) this Court affirmed a conviction of Larceny of Domestic Animals and held that the evidence was sufficient to sustain a conviction of the defendant where it was shown that he was in possession of a recently stolen calf and that his automobile was equipped with tires having an identical tire tread to the marks found near the ranch where the calf was stolen. In that case, this Court cited the case of Watkins

v. State, Okl.Cr., 351 P.2d 317 (1960), wherein it was held:

> "Questions of fact are for the sole determination of the jury and their finding will not be disturbed on appeal where there is any evidence reasonably tending to support the verdict."

We find that the evidence was more than sufficient to support the verdict of the jury, and therefore find defendant's second proposition to be without merit.

■ Defendant's third proposition of error asserts that the trial court erred in instructing the jury by Instruction Number 6, over defendant's objection. Instruction 6 was as follows:

> "You are further instructed that:
>
> "The possession of recently stolen property found in the possession of one alleged to have stolen the same may be explained, but such possession is a circumstance, which, if unsatisfactorily explained to the Jury may be considered in determining the guilt or innocence of the person charged with the theft thereof.
>
> "The mere possession of property recently stolen is not alone sufficient to convict the possessor of larceny, but when such fact is supplemented with other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the Jury to pass upon as to the guilt or innocence of the Defendant."

Defendant cites only one case in support of his proposition, that being Payne v. State, Okl.Cr., 435 P.2d 424 (1967). The *Payne* case is readily distinguishable from the case at bar. In the *Payne* case the instruction given was based on the premise that possession of stolen property was a presumption of guilt, which was found to be a violation of constitutional due process. Therefore, instructions in this regard were subsequently amended, as to the one shown above. In this case, the Court correctly instructed the jury as to this concept of law applicable to the fact presented. See McLeroy v. State, Okl.Cr., 380 P.2d 546 (1963); and Cornelius v. State, Okl.Cr.,

438 P.2d 295 (1968). We, therefore, find the defendant's final proposition to be without merit.

After an examination of the record and transcript of trial, it is the decision of this Court that there was no error sufficient for reversal of this case; and therefore the judgment and sentence of the trial court in case CRF–71–1 is affirmed.

BLISS, P. J., and BUSSEY, J., concur.