# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 15, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2023-SC-0107-MR

BRENDA PORTER                                               APPELLANT

               ON APPEAL FROM JEFFERSON CIRCUIT COURT
v.                 HONORABLE ANNIE O'CONNELL, JUDGE
                            NO. 18-CR-000220

COMMONWEALTH OF KENTUCKY                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Jefferson County jury found Appellant Brenda Porter (Porter) guilty of murder, tampering with physical evidence, and abusing a corpse. In accordance with the jury's recommendation, the trial court sentenced her to a total of forty years in prison. Porter brings two unpreserved issues on appeal. Porter claims that (1) during *voir dire*, the Commonwealth made improper comments upon her right to remain silent, and (2) the trial court failed to confirm Porter's continued desire to be absent from the courtroom during the cross-examination of the medical examiner. We conclude palpable error relief is not warranted.

**<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

On January 19, 2018, Porter killed David Burch (Burch). Two days later, police were called to perform a welfare check at the residence shared by Burch

and Porter. The caller informed the police that a "black female named Brenda may have harmed or killed the owner of the vehicle that she is currently driving." The police found Burch's body outside, wrapped in bedding and plastic tarp. Porter was pulled over in a traffic stop. She voluntarily went to the police station and gave a Mirandized[1] statement.

Porter described her long-term, sometime romantic, relationship with Burch. She shared details of an on-going argument she and Burch had been having and the fight that occurred when she returned home from work the morning of January 19. Porter admitted that she lost control and that she hit Burch on the head multiple times with a heavy statue. According to the medical examiner's testimony, Burch had multiple lacerations on his head from blunt force trauma, resulting in Burch's death. Porter explained in her statement that she did not call 911 after the altercation because she did not think she would be believed. Porter also stated in her interview that she did not know Burch was dead until later that evening, and, after discovering his death, did not know what to do. Porter described wrapping Burch's body in blankets, moving his body, and cleaning the room where the fight occurred.

Porter was indicted for committing murder, tampering with physical evidence, and abusing a corpse. Porter was tried in a five-day trial. The Commonwealth called fourteen witnesses. Porter testified on her own behalf, claiming she acted in self-defense. The jury found Porter guilty of all three

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

crimes. The trial court imposed the sentence recommended by the jury: forty (40) years for murder, five (5) years for tampering with physical evidence, and twelve (12) months for abuse of a corpse, running concurrently. This appeal followed.

## ANALYSIS

Porter brings two issues on appeal. As noted above, Porter argues that (1) during *voir dire*, the Commonwealth made improper comments upon her right to remain silent, and (2) the trial court failed to confirm Porter's continued desire to be absent from the courtroom during the cross-examination of the medical examiner. Because these issues are unpreserved, Porter requests palpable error review under Kentucky Rule of Criminal Procedure (RCr) 10.26.

RCr 10.26 provides:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

An error is palpable when it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (quoting *Burns v. Level,* 957 S.W.2d 218, 222 (Ky. 1997)). To obtain relief, the error must be "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006). Manifest injustice may be found to have occurred when, after consideration of the record, the defect alleged "seriously affect[ed]

3

the fairness, integrity, or public reputation of the proceeding." *Id.* at 4 (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).

Porter's claims are addressed in turn.

## I.      UNDER PALPABLE ERROR REVIEW, THE COMMONWEALTH'S *VOIR DIRE* COMMENTS DO NOT WARRANT RELIEF.

During *voir dire*, the Commonwealth asked the venire why the burden of proof in a criminal case is "beyond a reasonable doubt." After a juror responded that the standard is meant to avoid a wrongful conviction, the following exchange occurred between the Commonwealth and the venire.

> Commonwealth Attorney:
> Yes.  Um. So the burden or proof is beyond a reasonable doubt and the reason for that, yes, is the last thing we ever want is someone being wrongfully convicted.  That is my nightmare.  I do not want that.  And with a criminal case, liberties are at stake.  Right?  Ms. Porter's liberties are at stake.  That is why we have such a high burden — beyond a reasonable doubt.  That is my burden, and I accept that.  And I want each and every one of you to hold me to that burden.  Can everyone do that?  Yes?

> Venire:      Yes.

> Commonwealth Attorney:
> Okay.  Thank you.  Um.  And so again, it is my burden to prove, it is my job to prove my case beyond a reasonable doubt. With that said, [**the defense attorney] and the defense; they do not have to do anything.  They can sit here throughout this entire trial and not say anything.  And that is their right. Does everyone understand that?  Is anyone going to hold that against them, if for some reason [the defense attorney] decides he doesn't want to ask any questions, or throughout this trial he may not ask witnesses any questions?  He may not put on any proof; any defense.  He is entitled to that.  Because again, the burden is on me.**

Based upon the portion of the exchange highlighted in bold font, Porter argues that the Commonwealth's statements were an improper comment upon

her right to remain silent under the Fifth Amendment and Kentucky's procedural rules. Porter contends that the Commonwealth's election to comment on her right to remain silent during *voir dire*, and before defense counsel had the opportunity to first address the issue, is substantial error. The Commonwealth, on the other hand, disagrees that it commented upon Porter's Fifth Amendment privilege and that Kentucky's procedural rules prohibit its comment. The Commonwealth asserts that even if its comments were in error, they did not meet the standard for granting palpable error relief.

"It is fundamental that a prosecutor may not comment upon a defendant's exercise of his right to remain silent." *Slone v. Commonwealth*, 382 S.W.3d 851, 860-61 (Ky. 2012). *Griffin v. California*, 380 U.S. 609 (1965) (Stewart, J., joined by White, J., dissenting), and *Wilson v. United States*, 149 U.S. 60, 60 (1893), preceding *Griffin*, are the United State Supreme Court cases from which the principle flows. We review these cases as a backdrop to Porter's claim.

In 1893, in *Wilson*, the United States Supreme Court was tasked with interpreting a federal statute to determine whether the United States made improper comments during closing argument. *Id.* The statute provided

> that in the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors, in the United States courts, . . . in any state or territory, including the District of Columbia, the person so charged shall, at his own request, but not otherwise, be a competent witness; and his failure to make such request shall not create any presumption against him.

5

Wilson, indicted for violating a statute relating to the use of the mail to give information where and by what means obscene and lewd publications might be obtained, did not request to be a witness or offer himself as such at his trial. *Id.* In closing argument, the district attorney of the United States commented upon the fact that Wilson had not appeared on the stand, stating in part, "[I]f I am ever charged with a crime, I will not stop by putting witnesses on the stand to testify to my good character, but I will go upon the stand, and hold up my hand before high heaven, and testify to my innocence of the crime." *Id.* Defense counsel objected. The trial court stated in part, "I suppose the counsel should not comment upon the defendant not taking the stand," and the district attorney replied, "I did not mean to refer to it in that light, and I do not intend to refer in a single word to the fact that he did not testify in his own behalf." Defense counsel again objected. *Id.* Wilson was found guilty of the charged crimes and appealed. *Id.* Wilson complained about the district attorney's reference to his failure to appear on the stand as a witness and to testify to his innocence of the charge against him, and the neglect of the trial court to forbid and condemn such reference. *Id.* Because the Supreme Court was unable to say the error was harmless, it reversed the judgment and remanded the case for a new trial. *Id.* at 70.

Analyzing the statute, and its declaration that a criminal defendant's failure to request to be a witness in the case shall not create any presumption against him, the Supreme Court explained that in Wilson's case, that provision

6

of the statute was plainly disregarded.  *Id.* at 65-66.  The Supreme Court

stated:

> To prevent such presumption being created, comment, especially hostile comment, upon such failure must necessarily be excluded from the jury. The minds of the jurors can only remain unaffected from this circumstance by excluding all reference to it.
>
>    . . . .
>
> [While a criminal defendant may choose to testify on his own behalf and be successful in establishing his innocence] the act was framed with a due regard also to those who might prefer to rely upon the presumption of innocence which the law gives to every one, and not wish to be witnesses.  It is not every one who can safely venture on the witness stand, though entirely innocent of the charge against him.  Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him.  It is not every one, however honest, who would therefore willingly be placed on the witness stand.  The statute, in tenderness to the weakness of those who from the causes mentioned might refuse to ask to be witnesses, particularly when they may have been in some degree compromised by their association with others, declares that the failure of a defendant in a criminal action to request to be a witness shall not create any presumption against him.

*Id.* at 65-66.

The Supreme Court remarked that the trial court, in the face of

comments which plainly intimated to the jury that it was a "circumstance

against the innocence of the defendant that he did not go on the stand and

testify[,]" should have said that the counsel is forbidden by the statute to make

any comment which would create or tend to create a presumption against the

defendant from his failure to take the stand.  *Id.* at 67.  The Supreme Court

concluded that the impression was left on the minds of the jury that, if Wilson

7

were an innocent man, he would have gone on the stand as the district attorney stated he himself would have done. *Id.*

In 1965, less than a year after the self-incrimination provision of the Fifth Amendment was found applicable to state trials by the Fourteenth Amendment, *see Malloy v. Hogan*, 378 U.S. 1 (1964), the United States Supreme Court granted certiorari in *Griffin*, 380 U.S. 609, to address whether a California constitutional provision violated the Fifth Amendment clause that no person "shall be compelled in any criminal case to be a witness against himself." *Id.* at 612; U.S. Const. amend. V. While the California Constitution stated that "No person shall . . . be compelled, in any criminal case, to be a witness against himself," it further provided that "in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury." *See People v. Modesto*, 398 P.2d 753, 759 n.1 (Cal. 1965) (quoting Cal. Const. art. I, § 13), *overruled by Griffin*, 380 U.S. 609; *Griffin*, 380 U.S. at 610 n.10, 617.

The prosecutor's closing argument in Griffin's murder trial and the trial court's instruction to the jury were in conformity with this provision. In light of evidence placing Griffin with the victim the evening of her death and evidence placing him with her in the alley where her body was found, the prosecutor emphasized Griffin's failure to testify and deny or explain the evidence against him. *Id.* at 610-11. The trial judge instructed the jury as follows:

8

It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify, or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain any certain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.

*Id.* at 618. The jury found Griffin guilty as charged, and his conviction was affirmed by the Supreme Court of California. *Id.*

The United States Supreme Court framed its analysis around the federal statute considered in *Wilson.* The Supreme Court viewed the statute as reflecting the spirit of the Self-Incrimination Clause, stating, "[f]or comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' which the Fifth Amendment outlaws." *Griffin*, 380 U.S. at 614 (citation omitted). The Supreme Court further explained, "[The comment on the defendant's silence] is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Id.* Consequently, the Supreme Court concluded that the California comment rule violated the Fifth Amendment, describing it in substance, "a rule

9

of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify. No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance." *Id.* at 613. Often cited, the Supreme Court ultimately concluded that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.* at 615.

While questions of whether a prosecutor's closing arguments improperly infringed on the criminal defendant's right to remain silent are not uncommon in this Court,[2] like recently rendered, *Finch v. Commonwealth*, 681 S.W.3d 84

---

[2] See, for example, *Ragland v. Commonwealth*, 191 S.W.3d 569, 588-91 (Ky. 2006). In *Ragland*, the Court considered whether the Commonwealth's indirect comment during closing argument about the defendant's failure to testify required reversal. The Court explained, *id.* at 589-90, that for indirect comments,

> it is generally accepted that a comment violates a defendant's constitutional privilege against compulsory self-incrimination only when it was manifestly intended to be, or was of such character that the jury would necessarily take it to be, a comment upon the defendant's failure to testify, *Butler v. Rose,* 686 F.2d 1163, 1170 (6th Cir. 1982); *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955); *Byrd v. Commonwealth,* 825 S.W.2d 272, 275 (Ky. 1992) ("A prosecutor's comment on the failure of a defendant to testify must be manifestly intended to reflect on the accused's silence or of such a character that the jury would naturally and necessarily take it as such to constitute prejudice." (citing *Bagby v. Sowders,* 894 F.2d 792 (6th Cir. 1990)), *overruled on other grounds by Shadowen v. Commonwealth,* 82 S.W.3d 896, 897–98 (Ky. 2002)), or invited the jury to draw an adverse inference of guilt from that failure. [*United States v.*] *Robinson*, 485 U.S. [25,] 33-34 [1988] [(parallel citations omitted)]; *Moore* [*v. State*], 669 N.E.2d [733,] 739 [(Ind. 1996)].

(Ky. 2023), this case is another in which the defendant has raised a novel question — whether the prosecutor's comments during *voir dire* infringed upon the defendant's right to remain silent. The only Kentucky case cited in the parties' briefs as being on point is *Lanham v. Commonwealth*, 2015-SC-000388-MR, 2016 WL 2605627 (Ky. May 5, 2016), an unpublished case. *Finch*, rendered just prior to the completion of briefing in this case, is not cited.

Here, Porter cites Florida Supreme Court and Oklahoma Court of Criminal Appeals cases in support of her argument that in *voir dire*, the Commonwealth should be precluded from preemptively initiating comments about an accused's right to remain silent. In terms of analysis, Porter describes parenthetically the principle from each case. A brief review of the cases reveals that Florida and Oklahoma share a similar view of the constitutional restraints upon a prosecutor's comments;[3] while it appears that any prosecutorial comment during trial about the defendant's right to remain silent is considered error, the error is analyzed under the appropriate standard of review.[4] Porter also cites a United States Court of Appeals, Fifth Circuit (Texas) case to show that contrary authority exists. Texas, on the other hand,

---

[3] Porter cites *Marston v. State*, 136 So. 3d 563, 570-71 (Fla. 2014); *Grieve v. State*, 731 So. 2d 84, 84 (Fla. 4th Dist. App. 1999); *Varona v. State*, 674 So. 2d 823, 825 (Fla. 4th Dist. App. 1996); and *Stover v. State*, 617 P.2d 898, 900-01 (Okla. Crim. Cir. 1998).

[4] As reflected in *Marston v. State*, 136 So. 3d 563 (Fla. 2014), discussed below, Florida also recognizes the role the state's criminal procedure rules play in limiting the prosecutor's comments.

11

appears to view a prosecutor's *voir dire* questions about the defendant not testifying as not implicating Fifth Amendment concerns.

*Marston v. State*, the Florida Supreme Court case and the most recent of the Florida cases cited by Porter, explains Florida's approach as follows:

> "[Florida has] a very liberal rule for determining whether a comment constitutes a comment on silence." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). "[A]ny comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." *Rodriguez v. State*, 753 So. 2d 29, 37 (Fla. 2000) (quoting *State v. Marshall*, 476 So. 2d 150, 153 (Fla. 1985)); *see also DiGuilio*, 491 So. 2d at 1139 ("[A]ny comment, direct or indirect, by anyone at trial on the right of the defendant not to testify or to remain silent is constitutional error and should be avoided."). "Because of the common belief that the innocent have nothing to hide, courts vigilantly protect the right to remain silent against devaluation by innuendo or faint praise." *Varona* [*v. State*], 674 So. 2d [823,] 825 [(Fla. 4th Dist. App. 1996)].
>
> In addition to [Florida's] case law, Florida Rule of Criminal Procedure 3.250 prohibits the prosecutor from commenting on the defendant's failure to testify:
>
> > In all criminal prosecutions the accused may choose to be sworn as a witness in the accused's own behalf and shall in that case be subject to examination as other witnesses, but no accused person shall be compelled to give testimony against himself or herself, *nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his or her own behalf.*
>
> Fla. R.Crim. P. 3.250 (emphasis added). Florida Standard Jury Instruction 2.1 (criminal), states in pertinent part, "From the exercise of a defendant's right to remain silent, a jury is not permitted to draw any inference of guilt, and the fact that a defendant did not take the witness stand must not influence your verdict in any manner whatsoever." This portion of Standard Jury Instruction 2.1 is given *only* if requested by the *defendant*.

136 So. 3d 563, 569-70 (Fla. 2014) (footnote omitted).

12

*Hanf v. State,* explains Oklahoma's approach, which was applied to the prosecutor's voir dire comments in *Stover v. State,* 617 P.2d at 900-01:

This Court [considering Texas law] held in *Girdner* that:

'(T)he mere oblique reference to the failure of the defendant to take the stand was made at a time when the prosecutor could not possibly have known whether the defendant would testify or not. In such instances, where the comment is made in the evidentiary stage of trial, as it arose in this case, the remark could not be construed as a comment on the defendant's failure to testify in that his failure has not yet become a fact.' [*Girdner v. State,* 508 P.2d 683, 686 (Okla. Crim. App. 1973)].

After a careful consideration of all the facts in that case and an examination of the facts in the case at bar, this Court is of the opinion that the first holding in *Girdner* cannot stand. It is error for the prosecutor to comment—either directly or indirectly—At any stage of the jury trial—upon the defendant's right to remain silent. Therefore, we specifically overrule *Girdner* insofar as it allows the prosecutor to comment upon the defendant's right to testify or remain silent 'in the evidentiary stage of trial . . . in that his failure (to testify) has not yet become a fact.' *Id.*

560 P.2d 207, 211 (Okla. Crim. App. 1977) (footnotes omitted).

*Green v. Johnson* describes a contrasting approach under Texas law. *Green* states:

A prosecutor's statements regarding a defendant's failure to testify made *after* the introduction of evidence may violate the Fifth Amendment. *See United States v. Johnston,* 127 F.3d 380, 396 (5th Cir. 1997). During voir dire, however, before the introduction of any evidence, the prosecution may attempt to determine if a prospective juror will be prejudiced against the state by the absence of live testimony from the defendant. *See Campos v. State,* 589 S.W.2d 424, 426 (Tex. Crim. App. 1979) (stating that because the state's counsel had no way of knowing whether the defendant would testify, it was not necessarily error to comment on the defendant's potential failure to testify during voir dire); *see also Sanders v. State,* 963 S.W.2d 184, 190 (Tex. App. Corpus Christi 1998, n.w.h.). This is a valid area of voir dire inquiry under Texas

13

law as a prospective juror should be told what the law is before being excused for bias or prejudice against that law. *See Cuevas v. State,* 742 S.W.2d 331, 343 n. 12 (Tex. Crim. App. 1987).

160 F.3d 1029, 1038 (5th Cir. 1998).

As reflected in these state cases and the United States Supreme Court cases discussed above, constitutional, statutory and procedural rules may play a role in determining whether comments at trial infringe upon a defendant's right to remain silent and not testify. Here, the parties cite Kentucky Revised Statute (KRS) 421.225,[5] RCr 9.38,[6] and RCr 9.54(3)[7] as pertinent to deciding whether the prosecutor may properly comment during *voir dire* on a defendant's right to remain silent.

Porter advocates for a rule barring the prosecution from initiating comments about an accused's right to remain silent during *voir dire.* She argues that, in addition to being in agreement with the importance placed on

---

[5] KRS 421.225 states: "In any criminal or penal prosecution the defendant, on his own request, shall be allowed to testify in his own behalf, but his failure to do so shall not be commented upon or create any presumption against him."

[6] RCr 9.38, pertaining to the examination of jurors, states, in part:

> The court may permit the attorney for the Commonwealth and the defendant or the defendant's attorney to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the attorney for the Commonwealth and the defendant or the defendant's attorney to supplement the examination by such further inquiry as it deems proper.

[7] RCr 9.54(3) states:

> The instructions shall not make any reference to a defendant's failure to testify unless so requested by the defendant, in which event the court shall give an instruction to the effect that a defendant is not compelled to testify and that the jury shall not draw any inference of guilt from the defendant's election not to testify and shall not allow it to prejudice the defendant in any way.

14

the constitutional right to remain silent, such a rule would be consistent with Kentucky's recognition in RCr 9.54(3) and unpublished *Lanham*, that, in jury instructions, comments about the right to remain silent should remain within the exclusive province of the defendant. 2016 WL 2605627, at *3.

In *Lanham*, in addition to complaining about the prosecutor's *voir dire* comments, Lanham complained on appeal that the jury instructions impermissibly commented on his right not to testify against himself. *Id.* Lanham explained that because of the prosecutor's previous statement during *voir dire* concerning Lanham's decision not to testify, he made a strategic decision not to draw attention to the prosecutor's statement and requested that the trial court *not* instruct the jury on his Fifth Amendment right against self-incrimination and that failure to testify cannot be construed as a presumption of guilt. *Id.* The trial court denied Lanham's request and the jury was presented with the contested instruction. *Id.*

Because this Court had previously acknowledged in *Thornton v. Commonwealth*, 421 S.W.3d 372, 377 (Ky. 2013), that it can be a valid trial strategy not to instruct the jury on the defendant's Fifth Amendment right not to testify,[8] and unlike in *Thornton*, Lanham had properly preserved his

---

[8] *Id.* at 377 (footnote omitted) states:

Furthermore, RCr 9.54(3) conditions the entitlement to such an instruction upon a specific request by the defendant. We are well aware that some defendants in a criminal trial prefer, and therefore request, a specific instruction on the right to remain silent; others under the same circumstances prefer not to bring to the jury's attention their decision not to testify. When the defendant fails to request the instruction pursuant to RCr 9.54(3), neither a trial court nor an appellate court can know if the decision was a purposeful or a negligent omission.

objection, as a matter of first impression, the Court considered whether the court's denial of Lanham's request was error, and whether such error required reversal. *Lanham*, 2016 WL 2605627, at *3. The Court concluded that RCr 9.54(3)[9] is unambiguous, and consequently, under its plain language, the trial court abused its discretion by declining Lanham's request to omit the contested instruction. The Court, however, concluded that the error was harmless. *Id.* at *3-4.

The Commonwealth rebuts Porter's argument with RCr 9.38,[10] the rule under which *voir dire* is conducted, and argues that there is no Kentucky precedent for extending RCr 9.54's prohibition to the *voir dire* process. And in regard to the Florida and Oklahoma cases cited by Porter, without detail, the Commonwealth argues that those states have a different rule governing commenting on a defendant's silence, even during *voir dire*, and the rules are distinctly different from KRS 421.225.[11] The Commonwealth, citing *Thompson v. Commonwealth*, 147 S.W.3d 22, 51 (Ky. 2004),[12] in support, contends that

Accordingly, Appellant is not entitled to consideration of the issue on appeal under RCr 10.26.

[9] *See* note 7, *supra.*

[10] *See* note 6, *supra.*

[11] *See* note 5, *supra.*

[12] *Thompson* considered whether the trial court erred by not excusing six jurors for cause because of their attitudes in favor of the death penalty. It states, "The test for determining whether a juror should be stricken for cause is "whether, after having heard all of the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict." 147 S.W.3d at 51 (quoting *Mabe v. Commonwealth*, 884 S.W.2d 668, 671 (Ky. 1994), *superseded by other grounds by statute*).

16

any party or the trial court is allowed to *voir dire* prospective jurors on their ability to render a fair and impartial verdict in accordance with the facts and applicable law.

Beyond arguing that Kentucky's procedural rules do not support Porter's argument that the Commonwealth improperly commented during *voir dire* upon her right to remain silent, the Commonwealth views *Lanham* as persuasive here because it dealt with a similar issue; however, in *Lanham,* unlike here, the issue was preserved. Nevertheless, upon review, we do not find *Lanham* as lending analytical support to the *voir-dire* issue in this case. Lanham did not develop his argument in his brief and the Court's analysis of the *voir dire* issue does not cite case law.[13]

Lanham alleged his right under the Fifth Amendment and KRS 421.225 not to testify against himself was violated. *Id.* at *3. Lanham claimed that during *voir dire,* the prosecutor impermissibly referenced the possibility that he may choose not to testify during trial. *Id.* In Lanham's case, the prosecutor informed the venire panel that "if the defendant decides not to testify you can't consider it." *Id.* The prosecutor then asked the panel if everyone understood and agreed that "it's ok if he doesn't testify." *Id.* The trial court denied Lanham's motion to discharge the panel. *Id.* This Court explained that while

---

[13] Furthermore, *Lanham* is a multiple issue case. Lanham raised five issues on appeal. 2016 WL 2605627, at *1. Without separate opinion, three Justices concurred only in affirming the trial court's judgment. *Id.* at *5. Notably, the Fifth Amendment jury instruction decision which Porter cites in her favor was described as an issue of first impression. *Id.* at *3.

the appellant did not develop his argument beyond a facial claim that the prosecutor's statements constituted error, no error occurred. *Id.* The Court stated: "It is permissible and, in fact, common for defense counsel to ask these types of question during *voir dire.* And if defense counsel is permitted to ask these questions, then so can the Commonwealth." *Id.*

Lastly, although not cited in the parties' briefs, we consider recently decided *Finch.* Like in this case, Finch requested palpable error review of the prosecutor's *voir dire* comments.[14] We viewed the prosecutor's comments in context and acknowledged that the prosecutor's comments about the right to remain silent during *voir dire* may be distinguished as statements describing the law, but we also agreed with the Commonwealth that any error did not warrant palpable error relief. We stated:

> In order to be prejudicial, "[a] prosecutor's comment on the failure of a defendant to testify must be manifestly intended to reflect on the accused's silence or of such a character that the jury would naturally and necessarily take it as such to constitute prejudice." Here, the Commonwealth's statement that the defendant had a

---

[14] In *Finch,* 681 S.W.3d at 91, the defendant complained about the prosecutor's statement highlighted in bold font:

> So, I'm sure that [defense counsel] will talk about this a little bit more, but on the topic of credibility and your ability to weigh it and just testimonial evidence in general, **the defendant has the right to remain silent**. **He has the right to choose not to testify in this case, he does not have to do that. And you cannot hold it against him if he chooses not to testify. Do we all agree with that? Okay. However, if the defendant does choose to testify, do we all agree that we have to weigh his credibility the same way that you weigh any other witness' credibility? Can we all agree to do that?** Whenever a person takes the stand the judge is going to have them swear to tell the truth, and that's taken very seriously in a court of law. Is there anybody here who feels that if the defendant takes the stand he has less of a duty to tell the truth **simply because he is the one in trouble? No? Again, self-preservation, we all do it.**

18

right not to testify and that the jury could not hold his decision not to testify against him was just an accurate statement of the law. Moreover, as the statement occurred during voir dire, it could not have been a comment on Finch's failure to testify as the opportunity to testify had not yet presented itself. The remainder of the complained of language seems to be meant to assess whether anyone in the venire would view a defendant's credibility differently than any other witness. This served the fundamental purpose of voir dire: "to obtain a fair and impartial jury whose minds are free and clear from all interest, bias, or prejudice that might prevent their finding a just and true verdict." Finally, given the strength of the evidence against Finch, there is no substantial possibility that, absent this fleeting statement made during voir dire, the outcome of the trial would have been different.

681 S.W.3d at 91 (internal citations omitted).

In *Finch*, the appellant urged the Court to adopt a rule that categorically precludes the Commonwealth during *voir dire* from making comments about a defendant's right to remain silent. *Id.* Here, in contrast to *Finch*, Porter requests a tempered rule: during *voir dire*, the Commonwealth is precluded from commenting on a defendant's right to remain silent until defense counsel first addresses the issue. However, if a rule specific to *voir dire* is to be pronounced, it is better left to another day when counsels' arguments are more developed, perhaps as a result of preserved challenge, and fully briefed to the Court. Accordingly, here, as in *Finch*, we conclude that under palpable error review, even if the *voir dire* comments were improper, they do not justify relief. Porter does not present any arguments to show that manifest injustice resulted from the comments; there was more than sufficient evidence to induce a reasonable juror to believe that Porter was guilty of murder, tampering with physical evidence and abuse of a corpse.

19

## II. UNDER PALPABLE ERROR REVIEW, PORTER'S ABSENCE FROM THE COURTROOM DURING THE MEDICAL EXAMINER'S CROSS-EXAMINATION DOES NOT WARRANT RELIEF.

The Commonwealth called the medical examiner to testify about the autopsy conducted on Burch. The medical examiner testified that Burch suffered multiple blunt and sharp force injuries, and that he recommended to the coroner that the cause of death be ruled a homicide. Porter started crying when the medical examiner described photos, projected for the jury to view, showing receipt of Burch's body wrapped in layers of covering and showing stages of Burch's body being unwrapped. The trial court excused the jury and took a recess to allow defense counsel to speak with Porter. After the recess, at a bench conference, the trial court stated that it was understandable that Porter was upset. The trial court explained that it could not allow disruption during the testimony and indicated the desire for Porter to maintain composure during the rest of the testimony. The trial court then explained to Porter that she had the right to waive her presence during that part of the trial, and if she chose to do so, she could wait in a conference room while the medical examiner testified. The trial court stated:

> You do have the right to waive your presence in the courtroom during this portion of the trial if you want, and if you would prefer to sit outside in a conference room and during this testimony, you could do that. I suggest that you talk to [your attorney] about whether or not he thinks that would be a good idea for your defense at this stage. But I will permit you to sit in a conference room during this testimony. Do you want to talk to [your attorney] about it and see whether that's a good idea?

After defense counsel spoke with Porter, on the record, defense counsel relayed that against his advice, Porter chose to wait in the conference room.

20

The trial court stated: "Okay, I will permit her to sit in the conference room during this particular testimony, and we will proceed."

After the Commonwealth completed its direct examination of the medical examiner, there was no break in the proceedings before defense counsel conducted the cross-examination which lasted less than two minutes. Porter's counsel did not request that Porter return to the courtroom before the cross-examination.

Porter argues on appeal that the failure of the trial court to confirm with her a continued desire to be absent from the proceedings during cross-examination of the Commonwealth's witness warrants reversal. She argues that her absence during the medical examiner's cross-examination deprived her of the ability to consult with her counsel about areas of cross-examination regarding the nature and extent of Burch's injuries that would have been crucial to her self-defense theory, and that the cross-examination of the medical examiner was a critical stage of the criminal proceedings and the record does not establish a knowing waiver of her right to be present for the cross-examination of that witness. The Commonwealth argues that Porter voluntarily waiver her presence at trial and that even if error occurred, it did not rise to the level of palpable error.[15]

RCr 8.28(1) provides:

---

[15] The Commonwealth argues first, citing *Graves v. Commonwealth*, 384 S.W.3d 144 (Ky. 2012), that Porter's claim of error should not be reviewed because of invited error, i.e., Porter knowingly relinquished the right to be present and is "splitting hairs" as to whether she waived her absence for all of the medical examiner's testimony. We do not find that argument persuasive here.

21

The defendant shall be present at the arraignment, at every critical stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of the sentence. The defendant's voluntary absence after the trial has been commenced in his or her presence shall not prevent proceeding with the trial up to and including the verdict. The defendant may be permitted to remain on bail during the trial. Upon a hearing and finding by the trial court, that a defendant in custody on any charge, including a felony, intentionally refuses to appear for any proceeding, including trial, short of physical force, such refusal shall be deemed a waiver of the defendant's right to appear at that proceeding.

The parties do not dispute that the medical examiner's cross-examination was a critical stage of the trial. While acknowledging, citing *Fugate v. Commonwealth*, 62 S.W.3d 15, 19 (Ky. 2001), that even the most basic rights of criminal defendants, including the right to be present at a critical stage of trial, are subject to waiver, Porter cites *Powell v. Commonwealth*, 346 S.W.2d 731, 734 (Ky. 1961), for the premise that the "waiver should be so clear and unequivocal as to indicate a conscious intent." Porter contends that the fact she waived her presence for that portion of the direct examination is insufficient, as a matter of law, to constitute a waiver of her presence during her counsel's cross-examination of the medical examiner and that the record does not adequately establish that she intended to do so for that portion of the witness's testimony. Porter views the trial court's grant of Porter's absence "during this particular testimony," without clarifying that Porter also wished to remain absent if the testimony no longer involved autopsy

photos, as depriving her of her ability to consult with counsel and constituting palpable error.

To support its argument that Porter voluntarily waived her right to be present during the testimony of the medical examiner, the Commonwealth primarily relies on *Illinois v. Allen,* 397 U.S. 337, 344 (1970). In *Allen,* the defendant was removed from the courtroom during *voir dire* due to his disruptive and disrespectful behavior. *Id.* at 340. During a noon recess, Allen complained to the trial court about the fairness of the trial and said he wanted to be present during his trial. *Id.* The trial court told Allen he could remain in the courtroom if he behaved himself and did not interfere with the introduction of the case. *Id.* When Allen disrupted the proceedings, he was again removed from the courtroom. *Id.* at 340-41. During the prosecution's case-in-chief, Allen was brought in on several occasions for the purposes of identification. *Id.* at 341. After the prosecution ended its presentation of evidence, the trial court again informed Allen that he could return to the courtroom whenever he agreed to conduct himself properly. *Id.* Allen remained in the courtroom for the rest of the trial. *Id.* The United States Supreme Court concluded that under the circumstances of the case, the trial court acted within its discretion when removing Allen from his trial. *Id.* at 346-47.

The Commonwealth views the cause of Porter's absence as similar to the defendant in *Allen* in that her behavior led to her voluntary absence from the trial. Therefore, Porter cannot now claim that her absence constituted palpable error.

23

We are not inclined to view *Allen* and its application to this case in the light described by the Commonwealth. Porter apparently did not purposefully engage in behavior designed to disrupt the proceedings, generally, or to disrupt the medical examiner's testimony, specifically. Porter was present and non-disruptive during the medical examiner's testimony before the autopsy photos were displayed and she was not disruptive after she returned to the courtroom.

Porter, citing *Commonwealth v. Jackson*, 529 S.W.3d 739, 746-47 (Ky. 2017), contends that the because the record here is, at best, ambiguous with respect to the adequacy of the knowing relinquishment of a constitutionally protected right, waiver of that right should not be presumed. Porter further argues, citing *Grady v. Commonwealth*, 325 S.W.3d 333, 342 (Ky. 2010); *State v. Ui*, 418 P.3d 628, 634 (Haw. 2018); *State v. Tribble*, 67 A.3d 210, 222 (Vt. 2012); and *State v. Larraco*, 93 P.3d 725, 728 (Kan. Ct. App. 2004), that the fact that defense counsel did not request that Porter return to the courtroom prior to the beginning of the cross-examination is not determinative because it is or should be incumbent upon the trial court to establish Porter's knowing waiver of that fundamental constitutional right on the record.

We assume for analysis that the trial court's advisement to Porter that she needed to maintain composure during the rest of the testimony and that she could waive her presence "during this particular testimony," advisement which Porter complains did not contain clarification that Porter's absence

24

would extend beyond the prosecution's direct examination, was an easily perceptible, plain, obvious and readily noticeable error. Even so, upon consideration of the record, we conclude that manifest injustice did not result from the alleged error. While Porter alleges that her presence in the courtroom during the medical examiner's cross-examination would have allowed her to consult with her counsel about areas critical to her self-defense theory, that allegation does not detail how her self-defense theory would have changed and influenced the outcome of the trial. We conclude the alleged error did not seriously affect the fairness, integrity, or public reputation of the trial. *Martin,* 207 S.W.3d at 4.

## CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court's judgment is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

William Ellis Sharp
Louisville Metro Public Defender's Office

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General